THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT KORIS *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 80-3038, 80-3039, 80-3040 cons.

Opinion filed July 6, 1982.

Sidney Z. Karasik, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Thomas A. Rieck, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, Robert Koris, Robert Conway and Diana Stewart, were found guilty in a bench trial of the theft and possession of a stolen 1976 Lincoln automobile. Judgment was entered only as to the theft. (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1).) Koris was sentenced to two years' imprisonment; Conway and Stewart to 18 months' probation.

Defendants appeal, contending (1) they were not proved guilty beyond a reasonable doubt; (2) the trial court erred in ruling they had no standing to move to quash the search warrant or to suppress evidence; and (3) the trial court erred in denying their request for a continuance.

The State introduced the testimony of Charles M. Edgeton, since deceased, who had testified at the October 28, 1977, preliminary hearing that his automobile was taken on March 29, 1977, that it was later found inside the garage owned by defendant Koris and that he had not given anybody permission to take it.

Chicago Police Investigator James Houtsma testified that from March 29 through March 31, 1977, he and his partner (James Kennealy) were parked across the street from 8612 South 77th Avenue in Bridgeview, Illinois, maintaining a surveillance of that building. The property at that address was owned by defendant Koris of 7143 South 84th Street, Bridgeview.

At about 10:45 p.m. on March 29, 1977, defendants Conway and Stewart, with Conway driving, drove up in a black pickup truck with license No. 448 144 B. This license was issued to Donna Eaglesham of 2743 West 84th Place, Bridgeview. Stewart got out and unlocked the gate to the yard next to 8612 South 77th. Less than a minute later, Houtsma saw defendant Koris drive a 1976 Lincoln into the garage. The lighting conditions were poor at that time. The license plates on the Lincoln were 1977 plates No. GG9595. This license was issued to Donna Eaglesham of the same Bridgeview address. Houtsma testified that to the best of his recollection he had seen these license plates at least four times on four different automobiles. The Lincoln appeared to be a dark color over grayish. Koris drove the Lincoln in to the rear of the building. Stewart closed the gate. Conway walked to the rear, followed by Stewart. Later the three de-

fendants came out of the front of the building and left in the black pickup truck. They drove to a garage at 84th and Pulaski.

On the morning of March 30, 1977, Houtsma saw defendant Koris drive up to the garage at 8612 South 77th in a red dump truck. Thirty minutes later Koris drove out through the gate in a white GMC step van with 1977 license No. 1616 C. This license was issued to defendant Koris at 7143 West 84th Place, Bridgeview. Koris drove to Keystone Auto in Robbins. There Koris opened the rear of the van and removed a white automobile hood and fenders and white automobile doors with burgundy-colored interior vinyl. These matched the colors of the stolen 1976 Lincoln found the next day in Koris' garage.

On March 31, 1977, at about 7:05 a.m., Houtsma saw defendant Conway drive the same black Chevrolet pickup truck into the lot across from 8612 South 77th Avenue. Koris was also in the truck. Houtsma and Kennealy approached defendants Conway and Koris and showed them a warrant to search 8612 South 77th Avenue. Then Houtsma, Kennealy and two other officers and defendant Koris, using his keys, opened the front door of 8612 South 77th. Kennealy testified that he, defendants Koris and Conway, Investigators Ball, Houtsma and Picket entered the premises. The inside of the building was primarily a garage, the front part being an office.

In the garage area the police found a 1976 Lincoln automobile with no hood, doors or fenders, but otherwise in good condition. There were no license plates on the car. The car had a dark burgundy top and a white bottom. The value of the automobile was about $2700. The VIN number on the auto was 6Y 81 A 863026, the VIN number of Edgeton's automobile. Also in the garage were compressors, tools, tires and other auto accessories.

On cross-examination, Houtsma stated that he arrested defendants Koris and Conway only after executing the search warrant. He explained that his police report, which stated that Koris and Conway were taken into custody and then the search warrant was executed, was in error.

Donna Eaglesham testified that she resides with her sister in an apartment building at 7143 West 84th Place and that other tenants also live in that building. She owned a 1976 Chevrolet Camaro with license plate No. GG 9595. She may have had occasion to loan the car to others. During the time she owned the car, license plate No. GG 9595 was never removed from the car. Defendant Koris is Donna Eaglesham's brother-in-law. Both defendant Koris and defendant Stewart also resided at 7143 West 84th Place during the period of January through March of 1977. Donna Eaglesham at one time was secretary for Waz Body Shop in Oak Lawn, which was owned by defendant Conway.

Defendants argue that they were not proved guilty of theft beyond a

reasonable doubt. We disagree. Section 16—1 of the Criminal Code of 1961 provides in pertinent part (Ill. Rev. Stat. 1975, ch. 38, par. 16—1):

"A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over property of the owner; * * *

* * *

and (1) Intends to deprive the owner permanently of the use or benefit of the property * * *."

Here, the evidence is clear that defendants exerted unauthorized control over the 1976 Lincoln automobile of Charles M. Edgeton with the intent to deprive him permanently of its use or benefit. The police had for several days maintained a surveillance of the garage owned by defendant Koris at 8612 South 77th Avenue, Bridgeview. During the night of March 29, 1977, defendants Conway and Stewart drove up in a black pickup truck. Stewart alighted from the truck and unlocked and opened the gates. Almost immediately thereafter, Koris drove up in a 1976 Lincoln bearing license plates No. GG 9595 and drove it into the garage. Although the lighting was poor, it could be seen that the car was a dark color over a light color. Stewart then closed the gates. Conway walked to the back of the area. Later, all three defendants left the garage and drove in the truck to another garage. The license plates on the Lincoln and on the truck were issued to Donna Eaglesham of 7143 West 84th Place. She was Koris' sister-in-law and lived with her sister, Koris and defendant Stewart at that address, which was owned by Koris. The police had seen her license plates GG 9595 at least four times on four different automobiles.

The next morning Koris drove up to the garage on 77th Avenue in a red truck and left about a half hour later in a white van, whose license plates were issued to Koris at his 84th Place address. He drove to an auto shop in Robbins and unloaded a white automobile hood, fenders and white doors with burgundy-colored interior vinyl. These colors matched those of Edgeton's 1976 Lincoln found the next day in Koris' garage, where the search warrant was executed.

On that day, March 31, 1977, shortly after 7 in the morning, Conway, with Koris as a passenger, drove the black pickup truck into a lot across from the 77th Avenue garage. The police exhibited a search warrant to them. Koris, using his keys, opened the front door of that building. Defendants Koris and Conway with the police entered the garage, where they found Edgeton's stolen 1976 Lincoln stripped of its front fenders, hood and doors.

■■ Defendants argue that under *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, the exclusive unexplained possession of the Lincoln was insufficient to prove them guilty of its theft. In that case, the court said:

"To the extent that past Illinois decisions have held that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence of guilt, for conviction of burglary, those decisions, in the light of the United States Supreme Court holding in *County Court* [*County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213], can no longer be applied, * * *." (84 Ill. 2d 415, 423.)

While that case was concerned with burglary, defendants contend its reasoning is applicable to a charge of theft. Assuming, without deciding, that Koris' exclusive and unexplained possession of the Lincoln is insufficient under *Housby*, standing alone, the facts set out above are strong corroboration of Koris' guilt beyond a reasonable doubt. These same facts also are sufficient under the theory of accountability to find defendants Conway and Stewart guilty of theft beyond a reasonable doubt.

The facts show that defendants exerted recent, exclusive and unexplained possession of the stolen car. Koris was the sole occupant and driver of the car. He was in exclusive control of the car and Conway and Stewart acted as his partners in crime. The ownership of the garage was of minimal importance because Koris' possession did not depend on where it was stripped. His ownership of the garage is but another piece of corroborating evidence.

■■ Defendants contend that the trial court erred in ruling that defendants had no standing to move to quash the search warrant or to suppress evidence, without permitting defendants an opportunity to demonstrate that they had an expectation of privacy with respect to the search. Prior to trial, defendants filed a motion to quash the warrant and to suppress the evidence obtained in the execution of the search warrant—the stripped-down Lincoln found in Koris' garage. Defendants claim that Koris, as owner, had a legitimate expectation of privacy in the garage. We disagree.

Attached to their motion was the copy of the lease of the garage premises to a Michael Antonelli. In that lease, Koris on January 1, 1977, leased the garage for a 2-year term commencing January 1, 1977, and ending January 1, 1979, to Antonelli. This lease shows that the right to a legitimate expectation of privacy in the garage was in Antonelli, the lessee. In addition, only rights to enter the premises retained by Koris under the lease (paragraph 9) were "for the purpose of examining or exhibiting the same, or to make any needful repairs, or alterations thereof which Lessor may see fit to make * * *."

In *People v. Bochniak* (1981), 93 Ill. App. 3d 575, 417 N.E.2d 722, this court, in affirming the granting of the lessee-defendant's motion to suppress evidence obtained in the search of the demised premises, held that

the lessor who retained a key had no authority to consent to the search. The facts here are the converse of those in that case. It is the lessor, not the lessee Antonelli, who is asserting an expectation of privacy.

In *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, the Supreme Court of the United States held that fourth amendment rights are personal rights which may not be vicariously asserted and that a person aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his fourth amendment rights infringed. It also held that the rule of standing to raise vicarious fourth amendment claims should not be extended by a so-called "target" theory whereby any criminal defendant at whom a search was "directed" would have standing to contest the legality of that search and object to the admission at trial of evidence obtained as a result of the search. In a footnote in that case the court said:

> "Obviously, however, a 'legitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.' * * * Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. * * * On the other hand, even a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon. * * *" 439 U.S. 128, 143-44 n.12, 58 L. Ed. 2d 387, 401-02 n.12, 99 S. Ct. 421, 430-31 n.12.

In *Rawlings v. Kentucky* (1980), 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556, the court held that after *Rakas* the inquiry now is: "whether governmental officials violated any legitimate expectation of privacy held by" (448 U.S. 98, 106, 65 L. Ed. 2d 633, 642, 100 S. Ct. 2556, 2562) a defendant and that *Rakas* had "emphatically rejected the notion that 'arcane' concepts of property law ought to control the ability to claim the protections of the Fourth Amendment." 448 U.S. 98, 105, 65 L. Ed. 2d 633, 642, 100 S. Ct. 2556, 2562.

In *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547, the court abrogated the rule that defendants charged with a crime of possession were entitled to claim "automatic standing" to challenge the legality of a search without regard to whether they had an expectation of privacy in the premises searched. In that case the property which formed the basis for the indictment for the possession of stolen

mail had been seized during a search pursuant to a search warrant of an apartment rented by the mother of one defendant. There the court stated that it had held in *Rakas* that an illegal search only violates the rights of those who have " 'a legitimate expectation of privacy in the invaded place' " and "[w]e simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched" and "we must instead engage in a 'conscientious effort to apply the Fourth Amendment' by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." 448 U.S. 83, 91-93, 65 L. Ed. 2d 619, 628-29, 100 S. Ct. 2547, 2553.

■■ Defendants argue that under *Salvucci* this cause should be remanded for an opportunity to demonstrate, if they can, that their own fourth amendment rights were violated. We disagree. It is abundantly clear that by the lease Koris had surrendered his right of possession except for a limited purpose, not here involved. A hearing could not demonstrate more than that, unless Koris took the position that there was no lease. It cannot be assumed, however, that such was the fact, because Koris himself introduced the lease into the case.

Defendants finally claim that the trial court erred in denying their motion for a continuance to enable their counsel to prepare a defense and secure the attendance of a crucial defense witness, Michael Antonelli.

Defendants were initially represented by an attorney who filed and then, on October 28, 1977, withdrew a motion to quash the search warrant, with right to refile. On May 25, 1978, a different attorney entered his appearance for defendants, but withdrew because of ill health on December 13, 1979. In March of 1980, another attorney (John Conniff) entered the case for defendants. Shortly thereafter, he was hospitalized and was unable to resume his law practice until early June of that year. On July 3, 1980, the State announced that because the court had sustained a defense motion to suppress evidence in another prosecution against defendant Koris and three others, it could be ready on the next trial date (July 17) on the indictment involved in this case. On July 17 the State did not answer ready. Attorney Conniff entered his appearance for defendants and informed the court that he intended to submit an amended motion to quash the search warrant and suppress evidence. The court then set the matter for August 26 for a hearing on the motion to quash the warrant. On that date defendants' attorney filed a motion to quash warrant and to suppress evidence. The State objected to the filing on the ground that under *United States v. Salvucci* defendants had no standing to file the motion. The motion was then amended to include the lease of the premises to Antonelli. The court held that because of the lease Koris

had no legitimate expectation of privacy and therefore no standing to pursue the motion. Although the matter had been set for that date for only a hearing on the motion, trial commenced.

After the State had rested its case in chief and defendants' motion for a directed verdict had been denied, the motion to quash and suppress was renewed and again denied. One witness defendants wished to call was Antonelli, who was a Federal prisoner. Conniff stated that he had not been aware that he was going to have to go to trial on August 26 and that he would be prejudiced if he had to proceed without the Federal prisoner.

When Conniff discovered on August 26 that Antonelli was the lessee of the garage, he found that a conflict of interest arose because of his representation of Antonelli in several criminal matters, both Federal and State. Conniff was permitted to withdraw on August 27 and the trial suspended until September 18. The court stated that it was the responsibility of the defendants to get a lawyer as soon as possible and he will get a writ to secure Antonelli's presence and, if that was not done, the next court date would be the final court date; the case would be concluded on that date.

On September 18, 1980, Attorney Louis P. Buffardi entered his appearance for defendants and asked for a continuance for additional time in which to prepare a defense. He stated that he had attempted to secure Antonelli's presence but that the correspondence he had with the Federal prison system and the State's Attorney's office showed that approval by and cooperation by the State's Attorney's office was needed, which he had been unable to secure. Defendants' attorney made an offer of proof that lessee Antonelli's testimony would be relevant and probative as to whether he had possession of the garage. The motion for continuance was denied and the defense rested without calling defendants as witnesses.

Defendants argue that they were prejudiced because this refusal of a continuance prevented defense counsel from calling defendants and from securing the trial attendance of a crucial witness, Antonelli.

The granting or denial of a continuance to procure a witness is a matter within the sound discretion of the trial court (*People v. Jackson* (1979), 72 Ill. App. 3d 231, 390 N.E.2d 47) and depends on the circumstances surrounding the request. (*People v. Rivers* (1978), 61 Ill. App. 3d 376, 377 N.E.2d 1245.) Section 114—4(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—4(e)) provides: "(e) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." When reviewing the denial of such a continuance, this court must determine whether defendants acted diligently, whether the witness' testimony is material and could have affected the outcome of the case. (*People v. Rivera* (1978), 64 Ill. App. 3d 49, 380 N.E.2d 1018.) In

addition, the extent to which the denial embarrasses defendants in the preparation of their case and prejudices their rights must be considered. *People v. Jefferson* (1976), 35 Ill. App. 3d 424, 342 N.E.2d 185.

■■ Defendants had three weeks to locate and secure the attendance of Antonelli. The trial court specifically continued the case from August 27 until September 18 for that purpose. Moreover, defendants did not act diligently in securing the attendance of their witness. Defendants were aware that Antonelli was in a Federal prison when the case was continued on August 27. Defendants also knew before the final date that Antonelli would not be present in court. More importantly, defendants were aware of the Federal procedure for dealing with a State writ of *habeas corpus ad testificandum*. Federal authorities notified defendants nearly two weeks before the final date that they should procure Antonelli's testimony by deposition or interrogatories.

Defendants never made an offer of proof that they tried to depose Antonelli or send him interrogatories. Defendants realized that Antonelli might not answer any questions, just as he might have exercised his fifth amendment right to remain silent if he had been present at trial. At any rate, the failure to comply with the guidelines established by the Federal prison authorities demonstrated defendants' lack of diligence in securing the attendance of their witness at trial. This is so even if, as defendants contend, the State's Attorney's office refused to cooperate to secure Antonelli's presence.

Nor did the denial of the motion for a continuance allow defendants' attorney insufficient time to prepare for the conclusion of the trial. On August 27 defendants were granted a continuance to secure the testimony of Antonelli and to retain another attorney. The trial court admonished defendants that it was their responsibility to do both of those things. The trial court clearly instructed defendants that the next date was also the final date. The case arose out of an incident three years old. Defendants had sufficient time to prepare for the charges facing them. Further, the People had rested their case. Defendants had already presented a witness. Defense counsel knew that Antonelli would not be present, yet nothing was done to obtain his testimony. Also, defense counsel was accurately informed about the case or he would have withdrawn from representing defendants. The record shows that the trial court gave counsel the opportunity to withdraw if defendants had misrepresented the status of their case to him. The three-week continuance provided defendants sufficient time to prepare their case.

Even if Antonelli had testified, his testimony would have been immaterial. Defendants had already apprised the trial court that Antonelli was the lessee of the garage where the stolen auto was recovered. The lease between Antonelli and defendant Koris was before the trial court and spoke for itself. Any lease agreement was immaterial in light of the

surveillance testimony. All three defendants were associated with the stolen vehicle before the car even entered the garage. Koris drove the stolen Lincoln and Stewart and Conway assisted Koris. The actions of the latter two demonstrated that the operation had been carefully planned. They arrived at the garage less than a minute before Koris. As he neared the garage, Stewart left Conway and unlocked and opened the gates for Koris. Koris drove into the garage. Stewart and Conway secured the gates and joined Koris inside the garage.

Further, even if Antonelli's testimony was material, it would not have any relation to the convictions of Conway and Stewart.

The convictions and sentences are affirmed.

Affirmed.

GOLDBERG and McGLOON, JJ., concur.