[No. 29804-6-I. Division One. August 10, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. ANDREW C. WALTER, *Petitioner.*

*David B. Hirsch* of *The Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Ye-Ting Woo, Deputy,* for respondent.

PER CURIAM. — Andrew Walter sought discretionary review of the RALJ court decision affirming his conviction in Seattle District Court for preparation of a facsimile driver's license. A commissioner of this court denied the motion. Walter filed a motion to modify the commissioner's ruling. We grant the motion to modify, accept discretionary review, accelerate review pursuant to RAP 18.12 and adopt, in large part, the analysis set forth in the commissioner's ruling.

Walter took photographs of individuals under the age of 21 in front of a large mockup of the emblem of the state of Tennessee. The photographs were to be utilized in the prepa-

ration of counterfeit (facsimile) Tennessee driver's licenses of those individuals. Walter delivered the negatives of the photographs to a commercial film processor to have prints made. The manager of the film lab processing the negatives contacted the police when she saw the negatives. The manager was concerned about potential liability for making prints from the negatives. In response to the contact from the film lab, a police detective requested copies of the prints. The film lab complied and provided the police with a set of the prints. The individuals in the photographs were subsequently identified and interviewed. Several of those individuals testified at trial regarding the nature of the photographs and their intended use in the preparation of counterfeit identification. The trial court denied the pretrial motion to suppress the photographs and any evidence derived through the use of the photographs.

At the conclusion of the trial, Walter moved to dismiss based upon the insufficiency of the evidence because no evidence was presented that Walter had supplied facsimile identification to anyone. The trial court denied the motion. Walter appealed his conviction and the RALJ court affirmed.

Walter has moved for discretionary review arguing that the trial court erred in concluding (1) that Walter did not have a reasonable expectation of privacy in the film that was dropped off at the processing laboratory, (2) that the manager of the processing laboratory did not act as an agent of the police and (3) that the State need not prove Walter supplied the facsimile identification to a person under the age of 21 in order to convict Walter of preparation of a facsimile driver's license. Because this case raises an issue of public interest that has not heretofore been addressed by the courts of this state, we grant discretionary review pursuant to RAP 2.3(d)(3) and affirm.

MOTION TO SUPPRESS EVIDENCE

Walter contends that the trial court's denial of his motion to suppress the photographs and the evidence derived from

the photographs violated both the fourth amendment to the United States Constitution and article 1, section 7 of the Washington Constitution. The trial court did not err in denying the motion.

The Fourth Amendment prohibition against unreasonable searches and seizures protects persons only against governmental actions and not the actions of private citizens acting on their own initiative. *State v. Dold*, 44 Wn. App. 519, 521, 722 P.2d 1353 (1986). Constitutional protection may apply, however, if the private person functions as an agent or instrumentality of the State. *State v. Clark*, 48 Wn. App. 850, 856, 743 P.2d 822, *review denied*, 109 Wn.2d 1015 (1987). Critical factors in determining whether a private person acts as a government agent include whether the government knew of and acquiesced in the intrusive conduct and whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *Clark*, at 856. The burden to establish government involvement in a private search rests on the defendant. *Clark*, at 856. Additionally, the mere fact that there are contacts between the private person and police does not make that person an agent. *Clark*, at 856.

When the manager of the film lab initiated the contact with the police, she had already viewed the negatives. The manager responded to the request for copies of the prints by providing the copies to the police. The limited record suggests that the motivation of the manager was to further her own purpose of avoiding liability and not to act as an agent for police. There is no evidence of "encouragement" by the police that would render the film lab manager an agent. The film lab manager's contact with the police and her delivery of the prints constitute private action which is not subject to the constitutional limitations on searches and seizures. *See State v. Clark, supra* (delivery of boxes of materials, including photographic negatives, by a friend of defendant to the police constituted a private search not subject to constitutional limitations upon searches and seizures).

Walter contends that because article 1, section 7 of the Washington State Constitution affords individuals greater protections than the Fourth Amendment his constitutional rights were nonetheless violated. However, Washington courts have clearly rejected this proposition in the area of private searches. Our state constitution ordinarily governs only the conduct of the State's own agents or those acting under color of state law. *In re Teddington*, 116 Wn.2d 761, 775, 808 P.2d 156 (1991). "Article 1, section 7 of the Washington Constitution affords no more protection from private searches than does the Fourth Amendment." *Clark*, at 855. *Dold*, at 525; *State v. Ludvik*, 40 Wn. App. 257, 262, 698 P.2d 1064 (1985). Walter's contention that the court did not analyze this issue in detail in *Clark* and *Dold* does not change the express holding set forth in each of those cases.[1] The delivery of the prints to the police by the film lab manager did not constitute a violation of Walter's state or federal constitutional rights.

■ ■ Additionally, when Walter delivered the photographic negatives to the film processor, Walter no longer had a reasonable expectation of privacy in the photographs themselves or in the disclosure of the fact that the negatives existed. Any subjective expectation of privacy must be reasonable. *See State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 (1982); *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980). For purposes of determining whether a reasonable expectation of privacy exists under the state constitution, the inquiry is essentially the same as the Fourth Amendment analysis. *Tukwila v. Nalder*, 53 Wn. App. 746, 750, 770 P.2d 670 (1989); *State v. Berber*, 48 Wn. App. 583, 587-88, 740 P.2d 863, 74 A.L.R.4th 491, *review denied*, 109

---

[1]Walter implies that the *Dold* court failed to consider the applicability of article 1, section 7 because the appellant's argument on the issue consisted only of a bald assertion unsupported by citation to authority or analysis. The implication is not well founded. Despite the acknowledged shortcomings of appellant's briefing, the *Dold* court nonetheless addressed the issue and concluded that "[s]ince no state action was evident in Dold's case, Const. art. 1, § 7 is inapplicable." *Dold*, at 525.

Wn.2d 1014 (1987). Courts that have considered the search and seizure of film delivered to a film processor support the conclusion that Walter had no reasonable expectation of privacy. In *People v. Hebel*, 174 Ill. App. 3d 1, 527 N.E.2d 1367 (1988), the court held:

> In this case, the officers were called to Flash Foto by Kenneth Cannon, the manager, to view the photographs in question. Where Cannon, who was not a law enforcement officer, allowed them to view the photographs developed from the negatives that had been given to him, no police intrusion requiring fourth amendment justification occurred. Defendant had no legitimate expectation of privacy in the photographs at that point in time, and the officers, while viewing them, were in a location where they had a right to be.

*Hebel*, at 25. In *People v. Atencio*, 780 P.2d 46 (Colo. Ct. App. 1989), *cert. denied*, 790 P.2d 796 (1990), the court rejected the contention that the government had engaged in an unreasonable search under the fourth amendment to the United States Constitution or under the Colorado Constitution holding:

> [W]e conclude that when the defendant delivered the unexposed film to a film processor with the request that a proof sheet of prints be prepared and returned to him, he forfeited any expectation of privacy in the film's contents.

*Atencio*, at 48. In *United States v. Taylor*, 515 F. Supp. 1321 (D. Me. 1981), *aff 'd*, 683 F.2d 18 (1st Cir.), *cert. denied*, 459 U.S. 945 (1982), the court rejected the application of the Fourth Amendment to photographs that had been delivered for processing:

> LaFrance voluntarily gave a film depicting apparent criminal activity to a commercial establishment for development. In so doing, he necessarily was aware that the employees of Sea Mist Photo would view the prints of that film. He could have had no reasonable expectation of privacy in information thus voluntarily conveyed and necessarily so exposed to the employees of a commercial establishment.

(Citations omitted.) *Taylor*, at 1326; *see also State v. Urban*, 798 S.W.2d 507, 515 (Mo. Ct. App. 1990).

▪ Additionally, Walter's assertions that he had a contractual basis to anticipate that the confidentiality of his

negatives would be maintained is of no consequence. When a defendant confides in a third person, the defendant takes the risk that the third person might convey the information to the government. In *United States v. Taylor, supra,* the court observed:

> Moreover, in giving film depicting apparent criminal activity to a commercial establishment for development, LaFrance "[took] the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *United States v. Miller, supra* 425 U.S. [435] at 443, [48 L. Ed. 2d 71,] 96 S.Ct. [1619,] at 1624 [(1976)]. One participating in illegal activities cannot reasonably expect that disclosures made to third persons will enjoy constitutional protection simply because of an assumption that the information will not be revealed to the government.

(Citations and footnote omitted.) *Taylor,* 515 F. Supp. at 1326.

■ Walter contends that because photographs are involved the First Amendment requires that greater scrutiny be applied under the Fourth Amendment. While searches and seizures involving items protected by the First Amendment may be subject to "scrupulous exactitude", a more demanding scrutiny than would otherwise be the case, *see State v. J-R Distribs., Inc.,* 111 Wn.2d 764, 765 P.2d 281 (1988) (warrant to seize books on basis of ideas contained in books subject to scrupulous exactitude standard), the United States Supreme Court has refused to extend the "scrupulous exactitude" standard to all searches and seizures involving First Amendment rights, including searches and seizures involving photographs. *See New York v. P.J. Video, Inc.,* 475 U.S. 868, 875, 89 L. Ed. 2d 871, 106 S. Ct. 1610, 1615 (1986) (rejecting contention that more than warrant issued on probable cause was required to seize photographs from newspaper office); *Heller v. New York,* 413 U.S. 483, 490, 37 L. Ed. 2d 745, 93 S. Ct. 2789 (1973) (holding that First Amendment does not require hearing prior to seizing film as evidence when seizure did not prevent film from being exhibited); *Wabun-Inini v. Sessions,* 900 F.2d 1234, 1240 (8th Cir. 1990) (delivery of film to film processor not reviewed under "scrupulous exactitude" standard because prior restraint which is the basis for the stricter standard is not an issue in that circumstance). Accordingly,

we conclude that the trial court did not err in denying Walter's motion to suppress.

## CONSTRUCTION OF RCW 66.44.328

RCW 66.44.328 states in pertinent part:

> No person may forge, alter, counterfeit, otherwise prepare or acquire and supply to a person under the age of twenty-one years a facsimile of any of the officially issued cards of identification that are required for presentation under RCW 66.16-.040.

Walter contends that if an individual merely forges, alters, counterfeits or otherwise prepares a false identification, there still remains a second required element of "supply to a person under the age of twenty-one years". Walter contends that any ambiguity in the statute must be construed in his favor under the rule of lenity. The State argues that when someone forges, alters, counterfeits, or otherwise prepares a false identification he has violated the statute. The State asserts that acquiring and supplying a facsimile identification to a person under the age of 21 years is an entirely separate basis for liability under the statute.

A statute is to be given its plain meaning and absurd results are to be avoided. *State v. Kenney*, 52 Wn. App. 193, 758 P.2d 989 (1988). The rule of lenity applies only in the absence of clear legislative intent and cannot be applied to obtain a result contrary to legislative intent. *State v. Vinge*, 59 Wn. App. 134, 140, 795 P.2d 1199 (1990), *review denied*, 116 Wn.2d 1006 (1991); *State v. Rhodes*, 58 Wn. App. 913, 795 P.2d 724 (1990). Statutes should be construed as a whole, all language used should be given effect, and related statutes should be considered in relation to each other and whenever possible harmonized. *State v. Williams*, 62 Wn. App. 336, 813 P.2d 1293, *review denied*, 117 Wn.2d 1027 (1991).

Walter asserts that the construction advocated by the State would render the word "acquire" superfluous because someone who supplies an identification has necessarily already acquired it. Acquire generally means to come into possession of. *See Kelly v. Aetna Cas. & Sur. Co.*, 100 Wn.2d 401, 408, 670 P.2d 267 (1983). The plain meaning of the

words in the statute suggests that someone who supplies a facsimile identification would either acquire it, *e.g.*, from a third person, or prepare it himself. Under Walter's construction, the "supply element" would apply to all of the listed activities, *i.e.*, forge and supply, alter and supply, counterfeit and supply, otherwise prepare and supply, or *acquire and supply*. Yet if the Legislature had intended to impose a penalty on those who "supply" facsimile identification to a person under age 21 then the Legislature could have drafted the statute to simply make the supplying of such identification a crime and there would be no need to include a superfluous requirement of having forged, altered, counterfeited, prepared or acquired the identification. Additionally, the Legislature has separately proscribed the "transfer" of identification to a minor for the purpose of permitting the minor to obtain alcoholic beverages. RCW 66.44.325. Reading these related statutes together, RCW 66.44.328 is intended to have a broader application than just to prohibit supplying of facsimile identification. A person who prepares a facsimile identification has violated the statute without requiring evidence that the facsimile identification has been supplied to a person under age 21.

We affirm.

Reconsideration denied October 6, 1992.