[Nos. 33962-1-I; 33963-0-I.  Division One.  March 11, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES E.
FARMER, ET AL., *Appellants*.

*William J. Johnston*, for appellants.

*Randall K. Gaylord, Prosecuting Attorney*, and *Susan L.
Ferguson, Deputy*, for respondent.

GROSSE, J. — James Farmer and Carol Farmer appeal their convictions of making false claims or proof and forgery. The appeal presents the issue of whether a customer has a legitimate expectation of privacy in receipts evidencing a transaction with a business that the customer submits to an insurer in connection with a claim for property loss or damage. Assuming, arguendo, that the customer could have a legitimate expectation of privacy in the transaction, we find that the expectation ceases to exist once the customer discloses evidence of the transaction to a third party, such as an insurer. Consequently, the warrantless seizure of the receipts, subsequent to the disclosure, cannot violate the customer's right of privacy. For this reason, and because we find no merit to the other arguments the Farmers raise, we affirm their convictions.

On January 22, 1993, Carol Farmer informed her insurance agent, Brian Jedlicka, that a leaking water pipe had damaged or destroyed many items of personal property in the Farmers' home. Jedlicka referred the claim to American States Insurance Co., and it was assigned to John Leishman. James Farmer told Leishman over the telephone that the water in his basement had been six inches deep and that he and his wife purchased a "shop vac" and cleaned up the water themselves.

In response to Leishman's request, Mrs. Farmer sent Jedlicka a list of damaged items. Among the damaged items listed were 67 yards of carpet, a computer monitor, a compact disc player, a receiver, a dual cassette deck, a

printer, a Persian rug, a rotary saw, a space heater, two barstools, two speakers, a "Milwaukee Hole Hawg," and the shop vac.

The leak in the pipe was caused by faulty soldering of a joint by a plumber, Ron Harvey. The Farmers called Harvey to their house when the leak was discovered. Harvey had also been in the Farmers' house about two weeks prior to the leak.

Leishman called Ron Wood, an adjuster from Harvey's insurance company, to inform him that American States would be seeking reimbursement since Harvey was responsible for the leak. An agent notified Harvey of the Farmers' claim. Harvey was surprised to learn of the large dollar amount claimed and that carpeting, stereo equipment, and other items were claimed to have been damaged. Harvey told his agent he was in the Farmers' house two weeks before the leak and had not seen stereo equipment or carpeting installed in the basement. Wood informed Leishman that Harvey disputed the amount of the Farmers' claim.

After learning this, Leishman called the Farmers and attempted to set up an appointment to visit the house, but was unable to reach them. Leishman then sent the Farmers a proof of claim form. The Farmers returned the form along with receipts. Among the receipts were a receipt dated January 23, 1993 from Island Hardware for a shop vac; a receipt dated February 1, 1993 from Island Hardware for a Milwaukee Hole Hawg, a heater, and a rotary saw; a receipt from a floor covering store showing that carpet had been installed in the recreation room and bedroom in the Farmers' basement; and a receipt dated March 8, 1993 from U.S. Micro Express for an Okidata printer. The Farmers received a check from American States for $5,877.00, representing the amount claimed.

After paying the Farmers, Leishman requested reimbursement from Wood, the agent at the plumber's insurance company. Wood responded that the insurer was denying the claim based on the plumber's representations that

no carpet had been installed in the basement and that, at least as recently as two weeks before the leak, most of the items claimed had not been present in the basement.

Leishman called the owner of the store from whom the carpet had been purchased and who installed the carpet at the Farmers. The store's copy of the contract did not contain the words "recreation room, bedroom in basement," as did the copy of the contract the Farmers had submitted. Leishman's manager alerted the San Juan County sheriff's office of the possible insurance fraud.

Detective Jon Zerby was assigned to the case. After speaking with the carpet installer and the plumber, Zerby obtained a warrant to search the Farmers' house. When Zerby arrived at the Farmers' house unannounced, he advised them that they did not have to remain with him but were free to accompany him or his deputy while they conducted the search. Neither Mr. nor Mrs. Farmer were given *Miranda* warnings at the time.

Mrs. Farmer remained upstairs during most of the search of the basement. Mr. Farmer remained downstairs with the detective and the deputy. Mr. Farmer told the officers that no carpet had been installed in the basement but that he sought reimbursement for remnants that had been on the floor when the basement flooded. Mr. Farmer said that after the flood, a local sanitation company removed the damaged carpet. During the search of the house, Zerby saw items that were on the Farmers' list of items that allegedly had been destroyed. None of the items were new; but rather looked well-worn and well-used. Mr. Farmer said they were replacement items, but that to save money he bought them used instead of new. Zerby also noticed that the water marks on the wall were less than two inches high. Mr. Farmer declined to discuss Zerby's failure to see signs of carpet installation or of his observation of the presence of several items that the Farmers claimed had been destroyed in the flood. Zerby left a witness statement form with the Farmers.

Zerby then called American States to obtain copies of

the receipts the Farmers had submitted. A deputy sheriff called Island Hardware to compare the receipt the Farmers submitted and the store's copy. The store's copy of the receipt for the shop vac was dated October 7, 1992 and not January 23, 1993 as was the Farmers' copy. The receipt did not list the purchase of a shop vac, but rather listed only the amount of the "September discount" the Farmers would receive if they paid their bill on time. The store's copy of the receipt for the Milwaukee Hole Hawg, the heater, and the rotary saw was dated December 10, 1992, rather than February 1, 1993 as was the Farmers' copy. The store's copy mentioned only the "November discount" and reflected nothing regarding the purchase of power tools or a heater.

Zerby next contacted U.S. Micro Express, where the Farmers claimed to have purchased a printer on March 8, 1993. The store's copy of the receipt was dated August 20, 1992, long before the January 1993 leak.

The garbage collector who picked up trash at the Farmers' house told the sheriff's department that the Farmers had one "special pickup" in the winter of 1993 and that the pickup included carpet scraps. The biggest scrap he could recall seeing was a triangle two feet long by one and a half feet wide. He did not recall picking up bar stools, stereo equipment, tools, computer equipment, or heaters.

James Farmer was charged with filing false claims or proof in complicity with his wife, forgery, and second degree theft in complicity with his wife. Carol Farmer was charged with filing false claims or proof in complicity with her husband and second degree theft in complicity with her husband. The information charged that the crimes were committed between January 22 and 25, 1993. The theft counts were eventually dismissed. After the State rested, it moved to amend the information to change the charging period to January 22 until April 26, 1993. The court granted the motion over the Farmers' objections.

The jury convicted the Farmers as charged. Mr. Farmer was sentenced to 30 days on the false claims or proof count

and 15 days on the forgery count. Mrs. Farmer was sentenced to 15 days on the false claims or proof count. The Farmers were ordered to pay $5,877.79 in restitution. This timely appeal followed.

The Farmers contend that the trial court erred by admitting receipts from Island Hardware and U.S. Micro Express because the warrantless seizure of the receipts violated their right to privacy under the Washington Constitution.[1]

The constitutional right to privacy is implicated only if the actors were functioning as agents or instrumentalities of the State.[2] Here, the actors were private parties, namely the store clerks, who gave the police the receipts for purchases by the Farmers. We assume, but do not decide, that the store clerks were acting as agents of the State when they turned the receipts over to the police, and that the constitutional guarantees were therefore implicated.

■ ■ The right to privacy under the state constitution is broader than that under the federal constitution.[3] The relevant inquiry is whether, under state law, the Farmers had a legitimate expectation of privacy in the receipts possessed by the stores. Our courts have held that a person has a legitimate expectation of privacy in telephone calls placed from his or her home,[4] and in his or her garbage.[5] However, a person who writes or passes a bad check drawn

---

[1]Const. art. I, § 7. ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law.")

[2]*State v. Walter*, 66 Wn. App. 862, 866, 833 P.2d 440 (1992), *review denied*, 121 Wn.2d 1033 (1993).

[3]*State v. McFadden*, 63 Wn. App. 441, 446, 820 P.2d 53 (1991), *review denied*, 119 Wn.2d 1002 (1992). The Farmers concede that they cannot legitimately raise a Fourth Amendment claim with respect to the seizure of the receipts from third parties. *See United States v. Miller*, 425 U.S. 435, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976) (holding that a person has no reasonable expectation of privacy in his or her bank records); *Smith v. Maryland*, 442 U.S. 735, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979) (holding that telephone subscribers take the risk that the telephone numbers they dial will be disclosed by the telephone company).

[4]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[5]*State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990).

on his or her bank account cannot have any justifiable expectation that the status of the account at that time will remain private.[6]

■■ Assuming, arguendo, a customer has a legitimate expectation of privacy in a transaction with a business, that expectation ceases to exist once that customer discloses evidence of the transaction to a third party, as the Farmers did when they submitted the altered receipts to the insurance company. As we have previously recognized, the United States Supreme Court has consistently held that " 'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.' "[7] For example, in the context of the delivery of film to a film processor, " 'One participating in illegal activities cannot reasonably expect that disclosures made to third persons will enjoy constitutional protection simply because of an assumption that the information will not be revealed to the government.' "[8] Consequently, we find that any expectation of privacy the Farmers might have had in the transaction was eliminated by their own act of submitting evidence of the transactions to the insurance company, a third party, and that the warrantless seizures of the receipts from the stores did not violate the Farmers' right to privacy under the state constitution.

The judgment of the trial court is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be published in the Washington Appellate Reports and that the remainder

---

[6]*State v. McCray*, 15 Wn. App. 810, 551 P.2d 1376 (1976).

[7]*State v. Wojtyna*, 70 Wn. App. 689, 694, 855 P.2d 315 (1993), *review denied*, 123 Wn.2d 1007 (1994) (quoting *United States v. Meriwether*, 917 F.2d 955 (6th Cir. 1990) (citing *Smith v. Maryland*, 442 U.S. 735)). Although the *Wojtyna* court's statement was made in the context of a federal constitutional analysis, for purposes of determining whether a reasonable expectation of privacy exists under the state constitution, the inquiry is essentially the same as the Fourth Amendment analysis. *Walter*, 66 Wn. App. at 867.

[8]*Walter*, 66 Wn. App. at 869 (quoting *United States v. Taylor*, 515 F. Supp. 1321, 1326 (D. Me. 1981), *aff'd*, 683 F.2d 18 (1st Cir.), *cert. denied*, 459 U.S. 945 (1982)).

802

shall be filed to public record pursuant to RCW 2.06.040, it is so ordered.

KENNEDY, A.C.J., and AGID, J., concur.