IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Domestic Violence Protection Order for<br><br>JESSICA DIANE MONTESI,<br><br>                 Respondent,<br><br>    and<br><br>BRANDON EUGENE MONTESI,<br><br>                 Appellant. | No. 85858-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

SMITH, J. — In 2022, Jessica Montesi obtained a domestic violence protection order (DVPO) against her ex-husband, Brandon Montesi, that required him to surrender any weapons he possessed. When Brandon failed to comply with the DVPO, the trial court found him to be in civil contempt. A year later, Brandon asked the court to declare the weapons surrender statute unconstitutional under the Fifth Amendment, Fourth Amendment, Second Amendment, and the separation of powers doctrine. The trial court denied the motion. Brandon appeals.

FACTS

Jessica and Brandon Montesi[1] divorced in April 2022. In May 2022, Jessica moved for a DVPO. The trial court issued a temporary DVPO and, as

---

[1] We refer to the parties by their first names solely for the purpose of clarity and to avoid confusion.

part of that order, required Brandon to surrender his firearms. Brandon submitted a declaration of non-surrender, claiming all of his firearms were stored at his friend, Steve Krance's, house. Krance submitted a declaration stating the same.

After the court determined Brandon was not in compliance with the weapons surrender order, Krance submitted a new declaration identifying seven firearms he had received from Brandon. Jessica filed a declaration in response to Krance's declaration, identifying numerous weapons Brandon owned while they were married that Krance had not accounted for.

The court eventually set a show cause hearing and informed Brandon he could face consequences, such as monetary sanctions and incarceration, if he was not able to account for the missing firearms. The court issued a one-year DVPO and a new order to surrender weapons, listing the additional firearms Jessica had included in her declaration. Brandon surrendered his concealed pistol license and Krance surrendered the guns he had in his possession to local law enforcement. The court again found Brandon not in compliance with the weapons surrender order, noting 13 weapons were still unaccounted for.

The court held a contempt hearing in August 2022, and after a review hearing in September, the court issued an order finding Brandon in contempt of the weapons surrender order. In January 2023, Brandon surrendered three additional guns. Brandon claimed they were his grandfather's guns that he had stored in his safe at one point, but had not had in his possession since January 2022.

At a compliance hearing in July 2023, Brandon asked the court to find the weapons surrender statute unconstitutional under the holding in *State v. Flannery*, 24 Wn. App. 2d 466, 520 P.3d 517 (2022). After allowing the parties to brief the issue and hearing arguments, the court issued findings of noncompliance and an order denying Brandon's motion to declare the weapons surrender statute unconstitutional.

Brandon appeals, arguing the weapons surrender statute is unconstitutional under the Fifth Amendment, Fourth Amendment, Second Amendment, and the separation of powers doctrine.

ANALYSIS

Standard of Review

We review issues of statutory interpretation de novo. *State v. Wadsworth*, 139 Wn.2d 724, 734, 991 P.2d 80 (2000). A statute is presumed to be constitutional, and the party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional beyond a reasonable doubt. *State v. Evergreen Freedom Found.*, 192 Wn.2d 782, 796, 432 P.3d 805 (2019). When interpreting a statute, we must read the statutory provisions as a whole, not in isolation. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). When a party raises constitutional challenges under both federal and state law, this court will, when feasible, resolve questions first under the state constitution before analyzing federal law. *State v. Rivers*, 1 Wn.3d 834, 858, 533 P.3d 410 (2023).

Fifth Amendment

Brandon alleges the order to surrender weapons violates his right against self-incrimination. Jessica contends the issue is not ripe and, even if it were, Brandon's Fifth Amendment rights are not violated. We conclude the issue is ripe and Brandon's Fifth Amendment rights were not violated.

Protection against self-incrimination in criminal proceedings is guaranteed under the Fifth Amendment of the United States Constitution and article 1, section 9 of the Washington State Constitution. While both constitutions refer specifically to criminal proceedings, an individual may invoke their right against self-incrimination in any proceeding " 'where the answer might incriminate [them] in future criminal proceedings.' " *State v. Brelvis Consulting LLC*, 7 Wn. App. 2d 207, 218, 436 P.3d 818 (2018) (internal quotation marks omitted) (quoting *Alsager v. Bd. of Osteopathic Med. & Surgery*, 196 Wn. App. 653, 668, 384 P.3d 641 (2016)). A party must invoke their Fifth Amendment right against self-incrimination " 'through specific, individual objections, not by invoking blanket constitutional protection to avoid participating in the proceeding.' " *Brelvis*, 7 Wn. App. 2d at 222-23 (quoting *Alsager*, 196 Wn. App. at 668). The threat of incrimination "must be substantial and real, not merely speculative." *State v. Hobble*, 126 Wn.2d 283, 290, 892 P.2d 85 (1995). Determining whether the implication of self-incrimination is genuine lies within the sound discretion of the trial court. *Hobble*, 126 Wn.2d at 291.

The right to invoke the Fifth Amendment is not absolute. *Hobble*, 126 Wn.2d at 291. When an individual is protected " 'against the use of [their]

compelled answers and evidence derived therefrom in any subsequent criminal case in which [they are] a defendant,' " the party may be compelled to answer, even when the answer is incriminating. *Flannery*, 24 Wn. App. 2d at 480 (quoting *State v. King*, 130 Wn.2d 517, 524, 925 P.2d 606 (1996)). This type of protection is called "immunity from use and derivative use," and is "coextensive with the scope of the privilege against self-incrimination." *Kastigar v. United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972).

1. Ripeness

Jessica claims the issue is not ripe because Brandon never invoked his Fifth Amendment right against self-incrimination. While Jessica is correct that Brandon never explicitly asserted his Fifth Amendment right, RCW 9.41.801(9)(a) does not require a party to affirmatively invoke the privilege. RCW 9.41.801(9)(a) is self-executing and automatically confers immunity upon any individual subject to an order issued under RCW 9.41.800 or RCW 10.99.100.

Because Brandon was subject to an order to surrender and prohibit weapons issued in accordance with RCW 9.41.800(1), which covers DVPOs entered under chapter 7.105 RCW, he was automatically granted immunity and was not required to affirmatively invoke his Fifth Amendment privilege. Therefore, the issue is ripe for review.

2. Immunity

Here, Brandon contends RCW 9.41.801(9) does not provide adequate immunity and violates his right against self-incrimination. First, Brandon asserts orders under chapter 7.105 RCW and chapter 26.09 RCW are not listed in

5

RCW 9.41.801(9) and, accordingly, immunity under RCW 9.41.801(9) does not cover his weapons surrender order. But the immunity provision of RCW 9.41.801(9) specifically includes orders issued pursuant to RCW 9.41.800, and RCW 9.41.800 includes orders entered under chapter 7.105 RCW and chapter 26.09 RCW. Therefore, orders issued under those two chapters, including Brandon's DVPO issued under chapter 7.105 RCW, are covered by the immunity granted in RCW 9.41.801(9).

Next Brandon asserts RCW 9.41.801(9)(a) does not provide "blanket immunity" covering all scenarios under chapter 7.105 RCW and chapter 26.09 RCW. But, Brandon fails to read the statute as a whole. The additional provisions under RCW 9.41.801(9)(c) and (d) address situations that may arise and are not covered by the immunity granted under section (9)(a).

The language of RCW 9.41.801(9)(c) reads:

> If the person subject to the order establishes such a realistic threat of self-incrimination regarding possible criminal prosecution that is not addressed by the immunity from prosecution set forth in (a) of this subsection, the court shall afford the relevant prosecuting attorney an opportunity to offer an immunity agreement tailored specifically to the firearms or weapons implicated by the potential self-incrimination.

Subsection (9)(d) further clarifies, "Any immunity from prosecution beyond the immunity set forth in (a) of this subsection, may only be extended by the prosecuting attorney." These provisions grant the prosecuting attorney an opportunity to offer immunity not covered by subsection (9)(a). Brandon claims these provisions inappropriately "vest[] solely in the prosecutor the gatekeeping and decision duties of when they think a conditional grant of immunity applies."

6

While the statute does give the prosecuting attorney an opportunity to address immunity not provided under subsection (9)(a), immunity is not solely in the prosecutor's control. Brandon fails to consider the additional immunity provided under subsection (9)(d).

RCW 9.41.801(9)(d) states:

If the prosecuting attorney declines to extend immunity such that the person subject to the order cannot fully comply with its surrender provision without facing a realistic threat of self-incrimination, the court's order must provide for the surrender of every firearm, dangerous weapon, and concealed pistol license that does not implicate a realistic threat of self-incrimination.

RCW 9.41.801(9)(d) ensures that, if a defendant faces a realistic threat of self-incrimination and immunity has not been conferred by subsection (9)(a) or the prosecutor, the defendant does not have to surrender any incriminating weapons. Therefore, if Brandon is put in a situation where he is not covered by the immunity in subsection (9)(a) and the prosecutor declines to provide immunity, he can only be ordered to surrender weapons that are not self-incriminating.

3. Constitutionality

Brandon claims the procedures under RCW 9.41.801(9)(b) are unconstitutional because the court is given discretion to determine whether a person subject to a weapons surrender order has shown a realistic threat of self-incrimination, and obtaining immunity requires a party to meet certain conditions, such as showing compliance. But neither of these procedures raises a constitutional issue.

7

RCW 9.41.801(9)(b) states,

If a person subject to such an order invokes the privilege against self-incrimination at the time of issuance of the order or at a subsequent hearing, the court may afford the person subject to the order an opportunity to demonstrate that compliance with the surrender provision of the order would expose that person to a realistic threat of self-incrimination in a subsequent or pending criminal proceeding. The court may conduct this portion of the proceeding ex parte or receive evidence in camera, without the presence of the prosecuting attorney, after the court conducts an analysis under *State v. Bone-Club*,[2] . . . and concludes that the courtroom may be closed.

Washington courts have long held the court has the duty to determine whether a party invoking their Fifth Amendment privilege has shown a realistic threat of self-incrimination. *See, e.g., Hobble*, 126 Wn.2d at 291 ("The determination whether the privilege applies lies within the sound discretion of the trial court under all the circumstances then present."); *Seventh Elect Church in Israel v. Rogers*, 34 Wn. App. 105, 113, 660 P.2d 280 (1983) ("[I]t is for the court to determine whether silence is justified."). The court's discretion on this matter is not only appropriate, it is required.

Brandon also claims RCW 9.41.801(9)(b) creates unnecessary hurdles for a party invoking their Fifth Amendment privilege. Brandon notes the statute's use of the word "may" provides for a discretionary decision by the court, requiring the court to engage in a *Bone-Club* analysis before closing the courtroom. But this requirement is only necessary if it is not evident from the information requested that the party's Fifth Amendment rights are implicated. *See Rogers*, 34 Wn. App at 115 ("[W]here the external circumstances support the privilege

---

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

claim, an in camera hearing is not required.")  The "may" language in RCW 9.41.801(9)(b) is only relevant if the privilege is not covered under subsection (9)(a) and it is not apparent whether invoking the privilege is appropriate.  Brandon's order is covered under subsection (9)(a) because it was issued pursuant to RCW 9.41.800, so any implication of subsection (9)(b) is only theoretical.

Because Brandon's weapons surrender order is covered under RCW 9.41.801(9)(a), he has immunity from prosecution related to the surrender of firearms, including testimony associated with the surrender of firearms and complying with an order to surrender.  Therefore, Brandon's Fifth Amendment rights are not violated.

<u>Fourth Amendment & Article 1, Section 7</u>

Brandon asserts the weapons surrender statute violates his right against unreasonable searches and seizures.  Jessica contends Brandon's rights have not been violated because Brandon is not a state actor and the constitutional right to be free from unreasonable searches and seizures does not apply.  We agree with Jessica.

Under the Fourth Amendment to the United States Constitution, individuals have the right to be free from unreasonable searches and seizures.  Likewise, article 1, section 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."  Both the Fourth Amendment and article 1, section 7 protect individuals from unjustified government intrusion.  *City of Pasco v. Shaw*, 161 Wn.2d 450, 458-59, 166 P.3d

9

1157 (2007). But article 1, section 7 provides greater protection than the Fourth Amendment. *State v. Muhammad*, 194 Wn.2d 577, 586, 451 P.3d 1060 (2019). Under article 1, section 7, "a search occurs when the government disturbs 'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.' " *Muhammad*, 194 Wn.2d at 586 (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)).

      1.  <u>State Action and the Warrant Requirement</u>

Jessica contends we do not need to reach the issue of whether article 1, section 7 or the Fourth Amendment were violated because neither apply. Jessica notes article 1, section 7 and the Fourth Amendment are only applicable to state actors and claims Brandon was not acting in a governmental capacity at the time of the search.

The Fourth Amendment and article 1, section 7 apply only when a state action occurs, or when an individual is acting as a government agent. *Kalmas v. Wagner*, 133 Wn.2d 210, 216, 943 P.2d 1369 (1997). An individual is a state actor "if that person functions as an agent or instrumentality of the state." *Shaw*, 161 Wn.2d at 460. To determine whether an individual is a state actor, courts look to " 'the capacity in which [a person] acts at the time of the search.' " *Shaw*, 161 Wn.2d at 460 (alteration in original) (quoting *State v. Ludvik*, 40 Wn. App. 257, 262-63, 698 P.2d 1064 (1985)). The individual challenging the constitutionality of an action "bears the burden of establishing that state action is involved." *Shaw*, 161 Wn.2d at 460.

State action mainly involves law enforcement. *See*, *e.g.*, *Muhammad*, 194 Wn.2d at 584-96 (analyzing governmental action in the context of law enforcement obtaining cell phone records); *State v. Mecham*, 186 Wn. 2d 128, 380 P.3d 414 (2016) (discussing whether field sobriety tests by law enforcement constitute a search).[3] Under RCW 9.41.801(2), the role of law enforcement is to serve the order, inform the respondent the order is effective upon service, and take possession of any weapons surrendered. Law enforcement does not conduct a search unless the court finds probable cause that a crime occurred and issues a warrant. RCW 9.41.801(4).

A court order requiring Brandon to "search" his own home for weapons is not the type of search included in the protection of the Fourth Amendment or article 1, section 7. No governmental trespass into private affairs has occurred—Brandon is simply required to locate all weapons in his possession and surrender them to law enforcement. Brandon provides no argument for why producing weapons under a court order is state action. Brandon only briefly addresses state action in his reply, noting, "In the order to surrender possession, the trial court directed Appellant to take action to surrender the weapons in his possession. In doing so, the trial court made Appellant an instrumentality (albeit

---

[3] Other contexts not involving law enforcement where state action has been found include actions by tax appraisers (*State v. Vonhof,* 51 Wn. App. 33, 751 P.2d 1221 (1988)); city building inspectors performing nonconsensual inspections (*City of Seattle v. McCready,* 123 Wn.2d 260, 868 P.2d 134 (1994)); and school officials conducting searches of student luggage (*Kuehn v. Renton Sch. Dist. No. 403,* 103 Wn.2d 594, 694 P.2d 1078 (1985)). Like law enforcement cases, all of these cases involve one individual searching the property of another.

unwilling) of its order." (Citation omitted.) Brandon claims, because he was made an instrumentality of the state, a warrant was required before he could be forced to search his home. Brandon cites several cases to support his claim, but provides no explanation for how these cases advance his argument that he was acting as an instrumentality of the state. In fact, in each of the cases Brandon cites, the court did not find state action.[4] Without state action, no "search and seizure" as defined by law exists and, therefore, no violation of article 1, section 7 or the Fourth Amendment.

Because state action is not implicated when a court issues a weapons surrender order, article 1, section 7 and the Fourth Amendment are not applicable.

1. Search and Seizure under *Flannery*

Brandon contends *Flannery* supports a finding that the weapons surrender statute violated his right against unreasonable searches and seizures. But, *Flannery* is no longer instructive.

In *Flannery*, the State charged Dwayne Flannery with second degree assault and the court entered a no-contact order under RCW 10.99.040(2)(a), which instantly made it illegal for Flannery to possess firearms. 24 Wn. App. 2d at 475. The court also issued a weapons surrender order. *Id.* At the time Flannery's weapons surrender order was entered, former RCW 9.41.800 did not have an immunity provision. *Id.* at 476. Flannery moved to vacate the order,

---

[4] *State v. Clark*, 48 Wn. App. 850, 743 P.2d 822 (1987); *State v. Swenson*, 104 Wn. App. 744, 9 P.3d 933 (2000); *State v. Walter*, 66 Wn. App. 862, 833 P.2d 440 (1992); *Shaw*, 161 Wn. 2d 450.

claiming it violated his privilege against self-incrimination and his right to be free from unreasonable searches and seizures. *Id.* Flannery argued, because it was unlawful for him to own or possess a firearm under the no-contact order, a later order to surrender weapons would force him to incriminate himself unless he had some form of immunity. *Id.* at 476. The trial court held,

> [T]o the extent the order directs a defendant to search [their] home for firearms and other dangerous weapons and bring those items to law enforcement during a period when such possession and delivery of those items would constitute a criminal law violation since there is no immunity from prosecution for him set forth in the statute.

*Id.* at 477-78.

On appeal, the State did not argue the search was legal, it only argued the statute itself was not unconstitutional because a Fourth Amendment violation does not occur at the time of the search, but only when the fruits of a search are later used to prosecute. *Id.* at 485-86. The court disagreed with the State concerning the timing of a Fourth Amendment violation and concluded its argument failed for that reason alone. *Id.* at 485. Because the State did not address the Fourth Amendment violation further, neither did the court. *Id.* The court held the statute violated Flannery's Fourth and Fifth Amendment rights. *Id.*

In 2021, the legislature amended RCW 9.41.801 and added an immunity provision to the firearm surrender statutory scheme. LAWS OF 2021, ch. 215, § 75. The revisions of RCW 9.41.801 directly addressed the Fourth Amendment issue raised in *Flannery*.[5] The statute now provides immunity for individuals

---

[5] In his reply brief, Brandon claims for the first time that the trial court failed to address that the immunity provisions of the amendment to

surrendering weapons. Accordingly, surrendering weapons while under another order which prohibits the possessing of weapons will not result in a violation of criminal law.

In light of the amendment of RCW 9.41.801, Brandon has not established the presence of state action and his reliance on *Flannery* is misplaced. We conclude Brandon's Fourth Amendment right against unreasonable searches and seizures was not violated.

<u>Second Amendment</u>

Brandon contends the weapons surrender statute violates his Second Amendment right to bear arms. Jessica disagrees. Recent Supreme Court case law directly addresses this issue and establishes that the weapons surrender statute does not infringe upon Brandon's right to bear arms.

The Second Amendment provides individuals the right to bear arms. *See* U.S. CONST. amend. II. But this right is not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). When faced with a challenge to a firearm regulation, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680,

RCW 9.41.801(9) are not retroactive and, therefore, do not apply to his case. We do not consider arguments raised for the first time in reply briefs. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn. 2d 801, 828 P.2d 549 (1992). But even if we were to consider this argument, the legislature explicitly stated the provisions of amended RCW 9.41.801 apply to "[p]rotection orders entered prior to the effective date of this section under chapter 74.34 RCW or any of the former chapters 7.90, 7.92, 7.94, 10.14, and 26.50 RCW." LAWS OF 2021, ch. 215, § 65.

692, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024). At common law, individuals were barred from using firearms to threaten or menace others. *Rahimi*, 602 U.S. at 693. In accordance with these "going armed" laws, the Supreme Court has held, "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 602 U.S. at 698.

Here, Brandon contends the weapons surrender statute violates his Second Amendment rights, but he bases his entire argument on *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), which was reversed by the Supreme Court in *Rahimi*, 602 U.S. at 702. In *Rahimi*, the Supreme Court held a federal statute prohibiting an individual subject to a domestic violence restraining order from possessing a gun does not violate the Second Amendment. 602 U.S. at 700-02. After the Supreme Court's decision in *Rahimi*, the basis for Brandon's reasoning is no longer good law and his argument fails.

Because an individual subject to a DVPO may lawfully be prohibited from possessing weapons, the weapons surrender statute does not violate the Second Amendment.

<u>Separation of Powers</u>

Brandon claims the weapons surrender statute violates the separation of powers doctrine. Because the legislature properly delegated authority to the courts under RCW 9.41.801, the separation of powers doctrine is not violated.

The separation of powers doctrine is not explicitly enumerated in the Washington State Constitution, but the division of government into three separate branches "has been presumed throughout our history." *Hanson v. Carmona*, 1

15

Wn.3d 362, 387, 525 P.3d 940 (2023). While the branches are separate, they are not completely isolated. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 507, 198 P.3d 1021 (2009). "The separate branches must remain partially intertwined to maintain an effective system of checks and balances." *Hale*, 165 Wn.2d at 507. A separation of power issue arises when " 'the activity of one branch threatens the independence or integrity or invades the prerogatives of another.' " *State v. Chavez*, 134 Wn. App. 657, 666, 142 P.3d 1110 (2006) (quoting *State v. Moreno*, 147 Wn.2d 500, 505-06, 58 P.3d 265 (2002)). That two branches of government engage in " 'coinciding activities' " is not enough, the activity of one branch must threaten the independence of another. *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994) (quoting *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975)).

For one branch to delegate authority to another branch is not inherently improper. *In re Disciplinary Proceeding Against Petersen*, 180 Wn.2d 768, 781, 329 P.3d 853 (2014). "A delegation of authority must involve (1) standards to guide the [branch] and (2) procedural safeguards to control for abuse of discretionary power." *Peterson*, 180 Wn.2d at 781.

Here, the legislature appropriately delegated authority to the courts to ensure compliance with weapons surrender orders. The legislature provides clear guidelines to the courts for how and when to enforce the orders and neither the legislature's nor judiciary's activities threaten the independence of the other. Brandon provides no case law for why this type of delegation is inappropriate or why issuing weapons surrender orders would be better left to the legislature.

Because RCW 9.41.801 does not impermissibly delegate authority to the courts, it does not violate the separation of powers doctrine.

We hold the weapons surrender statute is constitutional and affirm.

WE CONCUR: