[No. 16760-0-I.   Division One.   May 18, 1987.]

THE STATE OF WASHINGTON, *Petitioner*, v. RUSSELL
S. ROME, *Respondent*.

*David S. McEachran, Prosecuting Attorney,* and *Robert A. Carmichael, Deputy; Kenneth O. Eikenberry, Attorney General,* and *Thomas F. Carr* and *Carol H. Rainey, Assistants,* for petitioner.

*William P. Roehl,* for respondent.

WILLIAMS, J.—Russell Rome, a commercial fisherman, was convicted in district court of refusing to permit inspection of fish he had caught. Rome's conviction was reversed by the Superior Court on the ground that WAC 220–20–010(18), making it unlawful for a fisherman not to comply with directions of Department of Fisheries personnel relating to the collection of sampling data from food fish and shellfish, is unconstitutional. This court granted the State's motion for discretionary review.

On September 13, 1984, Rome was fishing alone on his boat in the Gulf of Georgia. Department of Fisheries agents in a state research vessel came alongside and requested permission to come aboard, which Rome granted. The agents asked to examine fish located on the deck of the boat in order to determine the species, physical condition, age, sex, size and time of spawning of the fish. They also wanted to find out how many fish were caught, where they

were caught and at what depth. When Rome refused permission, the agents told him that he was violating a Department regulation and might be issued a citation. Although not suspecting Rome of engaging in any unlawful conduct, the agents subsequently issued him a citation for violation of WAC 220–20–010(18), which provides:

> It is unlawful for any person or corporation licensed by the department of fisheries to fail to comply with the directions of authorized department personnel related to the collection of sampling data or material from food fish or shellfish.

The issue is whether a commercial fisherman is criminally liable for refusing to permit a warrantless inspection of fish aboard his boat at sea by Department of Fisheries agents gathering biological and statistical information.[1] In *Vail v. Seaborg,* 120 Wash. 126, 131, 207 P. 15 (1922) our Supreme Court observed:

> The food fish in the waters of the state belong to the people of the whole state, and the state through its legislature has the same right of regulation and control of this property that it has of any other state property. The fact that appellant and others are engaged in the business of taking fish does not give them any property in the fish prior to taking. The right exists in the state in the first place to say whether any fish whatever shall be taken. By the act in question the right to fish is provided for, but only under such regulations as shall be found by a properly constituted board to preserve and perpetuate the supply.

In preserving and perpetuating its fish resources, the State must act in a constitutionally acceptable manner; its agents

---

[1]Although the parties also briefed and argued to the Superior Court the issue of whether this regulation was beyond the authority of the Director of Fisheries to adopt, the Superior Court ruled only on the constitutional issue. The Superior Court should have first considered the nonconstitutional issue. *Senear v. Daily Journal–American,* 97 Wn.2d 148, 152, 641 P.2d 1180 (1982). Because the parties briefed and argued to this court only the constitutional issue, we will decide only that issue. We express no opinion regarding whether WAC 220–20–010(18) is beyond the rulemaking authority of the Director under RCW 75.08.080. *See Hi–Starr, Inc. v. Liquor Control Bd.,* 106 Wn.2d 455, 458–64, 722 P.2d 808 (1986).

cannot engage in an unreasonable search. *See v. Seattle,* 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967). There is authority that commercial fishing is a "pervasively regulated business," making warrantless searches reasonable. *State v. Mach,* 23 Wn. App. 113, 115, 594 P.2d 1361 (1979); *United States v. Raub,* 637 F.2d 1205, 1208–10 (9th Cir.), *cert. denied,* 449 U.S. 922 (1980); *Tallman v. Department of Natural Resources,* 421 Mich. 585, 365 N.W.2d 724, 734–39 (1984). But, as Professor LaFave points out, even a business person in a pervasively regulated industry should not be subjected to unreasonable searches on the theory that consent is a condition of licensing by the State. 3 W. LaFave, *Search and Seizure* § 10.2(c), at 638–42 (2d ed. 1987); *see also Donovan v. Dewey,* 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534 (1981). To determine reasonableness under the Fourth Amendment there must be a balancing of the need to search against the invasion which the search entails. *Camara v. Municipal Court,* 387 U.S. 523, 536–37, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967).

There is no question but that the State has a compelling need to inspect fish in order to gather biological and statistical information. *Vail v. Seaborg, supra.* The Department of Fisheries has been charged with the duty to preserve, protect, perpetuate and manage the food fish and the shellfish in state and offshore waters. RCW 75.08.012. Therefore, to insure that this precious natural resource will be available for use by future generations and to accommodate the interests of commercial fishermen, sport fishermen and the Indian tribes, *see Puget Sound Gillnetters Ass'n v. Moos,* 92 Wn.2d 939, 603 P.2d 819 (1979), as well as complying with federal laws and regulations and international treaties, *see generally* U.S.C. Title 16, the Department must obtain information about the commercial harvest of fish.

The State's intrusion to inspect the fish aboard Rome's commercial fishing boat was minimal. As a commercial fisherman, he knew that the State required detailed information about the commercial harvest of fish. *See* WAC

220–69. The purpose of the inspection was limited to the collection of biological and statistical information. WAC 220–20–010(18). Only authorized Department of Fisheries personnel empowered to inspect a fisherman's catch, WAC 220–20–010(18), came aboard. The scope of the inspection did not extend to quarters in the boat. RCW 75.10.020(1). The Department's inspection of commercial fishing boats is carefully limited in purpose, place and scope. *See Washington Massage Found. v. Nelson,* 87 Wn.2d 948, 953–54, 558 P.2d 231 (1976); *compare United States v. Biswell,* 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972) *with Marshall v. Barlow's Inc.,* 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978).

Consequently, the inspection of fish aboard Rome's commercial fishing boat by the Department of Fisheries agents in order to gather biological and statistical information was not unreasonable and the Superior Court erred by concluding otherwise.

The judgment is reversed.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied September 22, 1987.

Review denied by Supreme Court January 5, 1988.