[No. 60524-6.    En Banc.    August 4, 1994.]

THE CITY OF SEATTLE, *Respondent*, v. JAMES P. MCCREADY, ET AL, *Appellants*.

*Sanders Law Office, Richard B. Sanders,* and *Eric R. Stahlfeld,* for appellants.

*Mark H. Sidran, City Attorney,* and *Miriam M. Reed, Assistant,* for respondent.

UTTER, J. — James McCready and others opposed to Seattle's Residential Housing Inspection Program challenge four inspections of two apartment buildings, one executed under a warrant and three pursuant to tenant consent. This is the second appeal arising from *Seattle v. McCready,* 123 Wn.2d 260, 868 P.2d 134 (1994) (*McCready* I), a declaratory judgment action filed by the City of Seattle (City). The first appeal was filed after the King County Superior Court ruled for the City on its claims (*McCready* I). This direct appeal is

from an order dismissing the counterclaims and third party complaint filed in the City's action.

Appellants raise two principal issues. The first is whether tenants of an apartment building have the authority to consent to a City inspection of their rental units and the common areas of their apartment building. Appellants contend such searches violate a landlord's rights under the Fourth Amendment and Const. art. 1, § 7.[1] The second issue is whether the municipal court possesses authority to issue administrative search warrants based on probable cause.

The factual context of this case is fully set forth in *McCready* I. It is summarized briefly here for ease of reference.

In July 1987, the City adopted an ordinance which directed the Department of Construction and Land Use (Department) to implement a housing code inspection program. Under this program, the Department inspected 350 multifamily housing units throughout the city. Approximately 78 percent of the inspected buildings had code violations, some of them serious. Of the buildings with code violations, over 80 percent had no previous complaints of violations.

Based on this demonstration project, the Department concluded that inspecting only in response to complaints was an ineffective method of ensuring compliance with the housing code. The Department recommended the City adopt a "proactive" program of housing inspections. In September 1989, after receiving the Department's report and recommendation, the City adopted a resolution which directed the executive to design and propose an enforcement program for the Housing and Building Maintenance Code. The Department subsequently selected some 30 percent of Seattle's multifamily apartment buildings for inspection. The Department sent a letter to the owners of these buildings, informing each of a forthcoming inspection. The Department also sent each tenant an information packet and a postcard to return to the Department indicating whether they consented to the inspection.

---

[1] The same issue was presented in Cranwell v. Mesec, cause 60385-5, which this Court transferred to Division One of the Court of Appeals on October 6, 1993.

Several apartment owners urged their own and other tenants to refuse to consent to the inspections on the ground such inspections were unconstitutional invasions of privacy and would significantly raise rents. Of the 8,000 requests the Department sent to tenants, it "received" over 6,000 refusals.[2] Meanwhile, a group of landlords filed a class action against the City, challenging the rental housing registration fee which funds the housing inspections.[3]

That same year, the City filed suit against the McCreadys and several other landlords seeking to have its housing inspection program declared valid. The City also requested the court issue a number of inspection warrants. The trial court granted the City's application for several warrants. The McCreadys immediately appealed, *Seattle v. McCready*, 123 Wn.2d 260, 868 P.2d 134 (1994), and also filed a counterclaim against the City seeking damages and attorney fees under 42 U.S.C. §§ 1983 and 1988. The counterclaim pleading is not part of the record. It appears however that it related to three inspections conducted with the consent of the tenants and a fourth inspection based on a warrant issued by the Seattle municipal court after an exterior inspection of the building revealed housing code violations. The trial court granted the City's motion for summary judgment and dismissed the counterclaim. The McCreadys appeal directly to this court.

Unlike the warrants challenged in *McCready* I, those challenged here were issued on the basis of probable cause to believe building code violations existed in the buildings to be inspected. We are now asked to decide the question *McCready* I did not explicitly reach, namely whether a municipal court possesses the authority to issue an administrative search warrant *supported by probable cause*.

I

INSPECTIONS CONDUCTED PURSUANT TO TENANT CONSENT

Three of the warrantless inspections challenged were conducted pursuant to tenant consent. If we hold their con-

---

[2]The Department treats no response as a refusal.

[3]*See Margola Assocs. v. Seattle*, 121 Wn.2d 625, 854 P.2d 23 (1993).

sent valid, the absence of a warrant is immaterial because consent vitiates the need for a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973). The first and dispositive issue we address with respect to these searches, then, is whether the tenants could consent to a search of their respective dwellings and the common areas leading to those dwellings.

Appellants concede that consensual inspections do not require a warrant, Opening Br. of Appellants, at 33, and they do not dispute the inspections were conducted pursuant to tenant consent. Rather, they contend that tenant consent is insufficient to authorize an inspection because landlords have an equal or paramount interest in the property they lease to others, and their consent is therefore required as well.

A

Individual Apartments

Appellants' challenge to the legality of the apartment inspections is premised on the notion that a landlord's right to exclude others is equal or superior to a tenant's. That assumption is unwarranted under both the federal and state constitutions.

■ ■ The United States Supreme Court has indicated that under the Fourth Amendment, tenants, not landlords, have a privacy interest in leased residences. *Chapman v. United States*, 365 U.S. 610, 616-17, 5 L. Ed. 2d 828, 81 S. Ct. 776 (1961). In *Chapman*, a tenant successfully challenged a warrantless search carried out with the landlord's consent. The court held the landlord had no authority to consent to a search of property leased to and occupied by others; the tenant enjoyed the privacy right in the leased premises, and only the tenant could waive that right. In the realm of housing code inspections, the Court reached the same result: without the tenant's consent, a warrant was necessary to authorize an inspection of rented premises. *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967). *See also In re 728 Belmont Ave.*, 24 N.C. App. 17, 22-23, 210 S.E.2d 73, 77 (1974) (*Camara*

"gives rise to the clear implication that the Supreme Court considered the Fourth Amendment privilege personal to the occupant of the place to be searched.").

Although the issue whether a tenant may consent to a search of his or her leased apartment is one of first impression in Washington, we have previously approved the reasoning of both *Chapman* and *Camara* in the context of Const. art. 1, § 7. *See State v. Mathe*, 102 Wn.2d 537, 543, 688 P.2d 859 (1984); *King Cy. v. Primeau*, 98 Wn.2d 321, 329, 654 P.2d 1199 (1982).

Other courts considering this issue have held that tenants may consent to searches of their leased premises.[4] Appellants cite no authority to the contrary. The reason a tenant may consent to a search of his or her leased premises has been explained as follows:

> [I]t is the right of possession rather than the right of ownership which ordinarily determines who may consent to a police search of a particular place. Thus, the landlord and tenant cannot be said to have "common authority" over rented premises, as that phrase is used in *United States v. Matlock* [415 U.S. 164, 171, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974)]; the tenant's right is superior, and thus the landlord cannot give consent which will be effective against the tenant. It logically follows, as the cases have held when the issue has presented itself, that the tenant may consent to a search of the leased premises during the term of the lease and that evidence found in a search based upon this consent is admissible against the landlord.

---

[4]*See, e.g., In re 728 Belmont Ave.*, 24 N.C. App. 17, 23, 210 S.E.2d 73, 77 (1974) (consent of a tenant in actual possession and control of the premises is sufficient to authorize a search by a city housing inspector to determine compliance with the housing code); *State v. Matthews*, 805 S.W.2d 776, 781 (Tenn. Crim. App. 1990) (the fact that appellant is co-owner of the property does not, of itself, establish a reasonable expectation of privacy in the premises); *People v. Koris*, 107 Ill. App. 3d 821, 825-26, 438 N.E.2d 593, 596 (1982) (lessee, not owner, has the expectation of privacy in the leased premises, even if the owner retains the right to enter the area to make repairs); *State v. Reagan*, 35 N.C. App. 140, 142-43, 240 S.E.2d 805, 807-08 (1978) (warrantless search of a barn owned by the defendant was valid because the tenant in possession of the barn consented). *See also United States v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir. 1978) (a party who has a key to the premises and access throughout the residence can validly consent to a search) (citing *United States v. Green*, 523 F.2d 968 (9th Cir. Cal. 1975)).

(Footnotes omitted.) 3 Wayne R. LaFave, *Search and Seizure* § 8.5, at 298-99 (2d ed. 1987). Because the tenant, not the landlord, has the privacy interest in the leased premises, we join the jurisdictions which hold that tenants possess the authority to consent to a search of their individual apartment units, notwithstanding any objections by their landlords.

## B
### Common Areas

Appellants also contend the tenants lacked authority to consent to a search of the common areas of the apartment buildings because the landlords have exclusive authority over those areas. The argument is unpersuasive under both the federal and state constitutions.

■ Contrary to Appellants' assertion, landlords do not have exclusive authority over the common areas. In order to admit visitors to an apartment, the tenant must necessarily possess the authority to permit guests to pass through the common areas leading to that apartment. The tenant must therefore possess the authority to consent to the visitor's entry into the building itself. For that reason, the authority over common areas is more properly characterized as common to both tenant and landlord, rather than exclusive to the landlord alone.

■ As regards searches of common areas, under both the Fourth Amendment and Const. art. 1, § 7, either of two parties who have common authority over the premises may consent to an entry or search. The United States Supreme Court has explained the meaning of common authority as follows:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 171 n.7, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974).

■ In *State v. Mathe*, 102 Wn.2d 537, 543-44, 688 P.2d 859 (1984), we adopted the "common authority" standard as the proper approach to determining questions of consent under Const. art. 1, § 7. In that case, we emphasized two points: (1) the consenting party must be able to permit the search in his or her own right, and (2) it must be reasonable to find the defendant has assumed the risk another might permit a search.

■ Both elements of the *Mathe* inquiry are met in this case. The tenants had authority to consent to the search of the common areas in their own right. Common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes." *Matlock, supra* at 171 n.7. The simple fact of common tenant access to these areas supports this finding.

Landlords in Washington assume the risk tenants might permit a search of common areas. Assumption of risk can be imputed to landlords by virtue of the landlord-tenant act, the legislative context within which landlords lease premises to tenants in Washington.

The landlord-tenant act clearly expresses a legislative concern to assure the fitness of residential tenancies through the conduct of necessary inspections.

The Legislature has found that "some tenants live in residences that are substandard and dangerous to their health and safety". RCW 59.18.115(1). It has accordingly provided that under certain circumstances, where a landlord fails to fulfill the statutory obligation to keep the premises fit for habitation, "the landlord shall have no power or authority to prohibit entry for the inspection". RCW 59.18.115(2)(c). Given the statutory design, and the legislative concern which underlies it, we deem that landlords operating residential apartment houses in Washington assume the risk tenants will consent to inspections of common areas.

Relying on *State v. Leach*, 113 Wn.2d 735, 744, 782 P.2d 1035 (1989), Appellants maintain that because they share

authority over common areas, the tenants could not consent to the inspection of those areas. *Leach* is inapposite. That case only held "the consent of one who possesses common authority over premises or effects is valid as against the *absent*, nonconsenting person with whom that authority is shared." *Leach*, 113 Wn.2d at 739 (citing *Matlock*, at 170). *Leach* does not control the outcome of this case because the landlords do not assert they were present when the tenants consented to the inspections of the common areas.

Because the consent was valid in three of the four instances in which the apartments and common areas were inspected, Appellants' challenge to the legality of those inspections fails.

## II
### INSPECTIONS CONDUCTED PURSUANT TO A WARRANT

In the case before us, one inspection was conducted without consent, pursuant to an administrative inspection warrant.[5] Appellants argue this warrant was invalid under Const. art. 1, § 7 because the Seattle Municipal Court lacks subject matter jurisdiction to issue civil warrants under the circumstances here present. They also maintain the warrant was invalid under the Fourth Amendment because it was too broad in scope, was unsupported by probable cause, and was issued ex parte. Appellants prevail on their state constitutional claim, but not on their federal claim.

### A
#### The State Constitution: Municipal Court Authority To Issue Administrative Search Warrants Based on Probable Cause[6]

In *McCready* I, a number of Seattle landowners argued the inspection warrants issued by the Superior Court pur-

---

[5]Appellants actually challenge the validity of two warrants, one involving 924 16th Avenue, the other involving 1737 Belmont Avenue. We do not address the validity of the former because it was never served or executed.

[6]Appellants' argument seems to be the City is barred, by virtue of a municipal court decision, from having this court determine the legal validity of the warrants issued here. See Br. of Appellants, at 20. Appellants' contention this issue

suant to the Residential Housing Inspection Program violated Const. art. 1, § 7 because they were issued by a magistrate who lacked the authority to issue such warrants. We agreed, and quashed the warrants.

The rationale underlying our disposition of *McCready* I is that municipal courts have no inherent authority to issue administrative inspection warrants, and that no statutory or rule-based authority exists to issue warrants on less than probable cause. *McCready* I, at 272-76. Unlike the warrants challenged in *McCready* I, however, the warrant here was issued on the basis of probable cause to believe building code violations existed in the building to be inspected. We are now asked to decide the question *McCready* I did not explicitly reach, whether a municipal court may issue an administrative search warrant *supported* by probable cause.

■ Because municipal courts have no inherent authority to issue administrative search warrants, they must rely on an authorizing statute or court rule. *McCready* I. Of the statutes and court rules cited by the City, none authorizes the issuance of administrative inspection warrants supported by probable cause to believe a *civil* infraction, rather than a crime, has occurred.

For example, one potentially relevant source of authority for issuing search warrants is RCW 10.79.015, which states:

> Any such magistrate, when satisfied that there is reasonable cause, may . . . upon . . . complaint made on oath, issue search warrant in the following cases, to wit:
>
> (1) To search for and seize any counterfeit or spurious coin, or forged instruments, or tools, machines or materials, prepared or provided for making either of them.
>
> (2) To search for and seize any gaming apparatus used or kept, and to be used in any unlawful gaming house, or in any building, apartment or place, resorted to for the purpose of unlawful gaming.
>
> (3) To search for and seize any evidence material to the investigation or prosecution of any homicide or felony . . . .

is barred by collateral estoppel is utterly misplaced. The warrants at issue here are different warrants from those quashed by the Municipal Court. See Clerk's Papers, at 805-06. The fact those warrants were quashed, even on facts similar to those present here, does not render the doctrine of collateral estoppel applicable.

(4) To search for and seize any instrument, apparatus or device used to obtain telephone or telegraph service in violation of RCW 9.45.240.

None of the above provisions apply to the facts of this case.

By court rule, this court has expanded RCW 10.79.015 to provide for the issuance of warrants to search for evidence of any *crime. See* CrR 2.3(b)(1) (governing superior courts); CrRLJ 2.3(b)(1) (governing courts of limited jurisdiction). Neither rule, however, authorizes the issuance of a warrant based on evidence of civil infractions.

CrR 2.3(b) and CrRLJ 2.3(b) provide:

> **Property or Persons Which May Be Seized With a Warrant.** A warrant may be issued under this rule to search for and seize any (1) evidence of a crime; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or (4) person for whose arrest there is probable cause, or who is unlawfully restrained.

Under these rules, the municipal court has authority to issue administrative search warrants supported by probable cause only if the application for the inspection warrant alleges a housing code violation which constitutes a *crime* rather than a civil infraction. In this case, although the warrant application alleged violations of the housing code in general, there was no specific allegation those violations constituted a crime.[7] See Application for Warrant; Clerk's Papers, at 350. Consequently, the warrant issued by the Municipal Court was without authority of law and must be quashed under *McCready* I.

---

[7] The Seattle Municipal Code lists two types of penalties for violations of the housing code, civil penalties (section 22.206.280) and criminal penalties (section 22.206.290). The latter are authorized only in specifically enumerated circumstances, none of which were alleged in the application for the warrant. *See* Seattle Municipal Code 22.206.290, authorizing criminal penalties for harassing or retaliating against a tenant (section 22.206.180); for removing posted notices (section 22.206.210); for violating an emergency order (section 22.206.260); and for "any pattern of wilful, intentional, or bad faith . . . refusal to comply with the standards . . . of this Code" (section 22.206.290(3))

## B
### The Federal Constitution: Validity of the Warrant Under the Fourth Amendment

Appellants also claim the warrant violated their Fourth Amendment rights because it was too broad in scope, was unsupported by probable cause, and was issued ex parte. All three arguments are unpersuasive.

The warrant was not too broad in scope. The challenged warrant authorized the inspection of "1737 Belmont". Appellants claim the warrant is invalid because it did not specify the particular apartments to be inspected. Yet there is no evidence the City sought this warrant to gain access to individual apartment units. That the warrant authorized only the inspection of common areas is implicit in its general language, and is attested by the facts of this case: the City did not rely on the warrant to enter individual apartments without tenant consent.

Contrary to the Appellants' contention, the warrant was supported by probable cause. The warrant application for 1737 Belmont Avenue was based on a declaration of Matthew Moeller, a housing and zoning inspector for the Department of Construction and Land Use of the City of Seattle. See Application for Warrant; Clerk's Papers, at 350-51. He personally observed housing code violations on the exterior of the building, including deteriorated rear stair assembly, exposed electrical wiring, and broken windows. Declaration of Matthew Moeller; Clerk's Papers, at 353. This evidence reasonably suggested the building was being inadequately maintained. It therefore supported the issuance of a warrant to inspect the interior common areas for signs of similar violations.

■ Finally, the authority cited by Appellants for the proposition administrative search warrants may not be issued ex parte is inapposite. See Br. of Appellants, at 25-26 (citing *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); *See v. Seattle*, 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1966)). Unlike the inspections challenged here, both *Camara* and *See* involved administra-

tive searches conducted in the absence of either consent or a warrant.

Because the Appellants have failed to establish a violation of their federal constitutional rights, they are not entitled to damages or attorney fees under 42 U.S.C. § 1983 and 1988.

The validity of the inspections conducted pursuant to tenant consent is affirmed; the inspection warrant issued by the Municipal Court is quashed because it was issued without the "authority of law" required by article 1, section 7 of the Washington State Constitution.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied October 31, 1994.