166 P.3d 1157 (2007)
CITY OF PASCO, Respondent,
v.
Bernard N. SHAW and B. Jean Shaw, husband and wife, and the marital community composed thereof; Columbia Basin Apartment Association, Robert Lee Gaines and Billie Jean Gaines, Manuela Vala, and Maria Galeana, Petitioners.
No. 77195-2.
Supreme Court of Washington, En Banc.
Argued May 9, 2006.
Decided September 13, 2007.
*1159 Lucinda Jean Luke, Thomas A Cowan Jr., Attorney at Law, Richland, WA, for Petitioners.
Leland Barrett Kerr, Paine Hamblen Coffin Brooke & Miller LLP, Kennewick, WA, Laura Debacker McAloon, Kirkpatrick & Lockhart Preston Gates Ellis, Spokane, WA, for Respondent.
William R. Maurer, Institute for Justice, Charity Osborn, Attorney at Law, Seattle, WA, for Amicus Curiae Institute for Justice Washington Chapter.
Daniel Brian Heid, Auburn, WA, for Amicus Curiae Washington Association of Municipal Attorneys.
John Maurice Groen, Groen Stephens & Klinge LLP, Diana M. Kirchheim, Pacific Legal Foundation, Bellevue, WA, for Amicus Curiae Rental Housing Association of Puget Sound.
BRIDGE, J.
¶ 1 In 1997, the city of Pasco enacted Pasco Ordinance 3231, which requires landlords to submit certification every two years ensuring that their rental units have met all applicable health, safety, and building code requirements. The certification must be signed by a city enforcement officer, a certified private inspector, or a Washington licensed private structural engineer or architect. The petitioners, both landlords and tenants, challenge the constitutionality of Pasco Ordinance 3231, arguing that on its face it violates article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution. The petitioners also argue that the ordinance is unconstitutionally vague.
¶ 2 We hold that Pasco Ordinance 3231 does not require state action and, therefore, neither article I, section 7 nor the Fourth Amendment is implicated. We also recognize that the ordinance does not require any inspection that landlords are not already permitted to undertake by existing law. Finally, we hold that Pasco Ordinance 3231 is not unconstitutionally vague. We affirm the Court of Appeals.

I

Facts and Procedural History
¶ 3 In the 1990s, the city of Pasco faced problems with a number of substandard rental housing units. For example, the landlords involved in this case owned rental units for which there was no working source of heat. Tenants were told they had to provide their own heat via portable electric space heaters. In addition, kitchens contained no vent, hood, fan, or window, despite the fact that natural gas was used to heat them. In one building, windows were not properly installed, allowing weather to enter the wall. Plumbing was in such disrepair that a bucket had to be used to catch water draining from a bathroom sink. One unit was infested with cockroaches. Some units had unsound wall finishes and warped or buckled walls.
¶ 4 One of the Shaws' tenants complained that they were refusing to make necessary repairs to her apartment. For some time, neither the heat nor the air conditioning worked. The doors did not open unless she resorted to using a knife or plastic card. Both the bathroom and kitchen sinks drained into buckets. The shower wall was collapsing and the kitchen and bathroom floors were rotting. When the tenant demanded either repairs, placement into a better rental unit, or refund of her deposit so she could move out, the apartment manager told her that if she continued to complain, he would have her deported.[1]
¶ 5 The city council sought to take steps to remedy these and similar situations. In July 1997, after public hearings involving testimony from both tenants and landlords, the city council passed Pasco Ordinance 3231. The ordinance regulates business licenses for residential landlords.
*1160 ¶ 6 The ordinance provides that a landlord must obtain a current business license. As a condition for the issuance of a license, the landlord must provide a certificate of inspection ensuring that:
the applicant's rental dwelling units comply with the standards of the Uniform Housing Code and do not present conditions that endanger or impair the health or safety of a tenant including:
(1) structural members that are insufficient in size or strength to carry imposed loads with safety;
(2) exposure of the occupants to the weather;
(3) plumbing and sanitation defects that directly expose the occupants to the risk of illness or injury;
(4) lack of water, including hot water;
(5) heating or ventilation systems that are not functional or are hazardous;
(6) defective, hazardous, or missing electrical wiring or electrical service;
(7) defective or inadequate exits that increase the risk of injury to occupants;
(8) violations that increase the risk of fire; or
(9) violations of other applicable codes, rules or regulations.
Clerk's Papers (CP) at 296. Landlords must provide a certificate of inspection during a preassigned three-month period every two years. The certificate must be based on the physical inspection of the dwelling not more than 90 days before the date of the certificate. Compliance must be certified by one of the following:
(1) a City of Pasco Code Enforcement Officer;
(2) inspectors certified by the United States Department of Housing and Urban Development for grant-required inspections;
(3) certified private inspectors approved by the City upon evidence of completion of formal training . . . ;
(4) a Washington licensed structural engineer;
(5) a Washington licensed architect;
CP at 297. All certifications must be submitted on forms provided by the city or approved by the federal Department of Housing and Urban Development. The city provides the services of its building inspector free of charge, or the landlord can use a private inspector that meets one of the qualifications listed above. Nothing in the ordinance prevents additional inspections pursuant to RCW 59.18.115 at the request of the tenant. Landlords that fail to comply are guilty of a code infraction, subjecting them to a fine of up to $500. A separate code infraction can be found for each day that the violations continue.
¶ 7 In 1999, the Shaws failed to provide the city of Pasco with a certificate of inspection for some of their rental units. As a result, they were not issued a business license, but they continued to rent the affected units. The city filed an action against the Shaws in superior court. In response, the Shaws asserted that tenants occupying some of their rental units had refused to permit "unauthorized searches of their home." CP at 8. The Shaws argued that absent a warrant, they could not permit a third party to inspect their tenants' homes. They also argued that Pasco Ordinance 3231 violates the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the Washington Constitution because it requires inspection of rental units even if the tenants do not consent and the ordinance is unconstitutionally vague.
¶ 8 An association of landlords, some tenants, and the Shaws then filed an action in federal district court, challenging the constitutionality of the Pasco ordinance under the Fourth Amendment. The state case was stayed during the pendency of the federal case. The federal district court granted summary judgment to the city, concluding that landlords and their privately engaged inspectors were not state actors and therefore their inspection pursuant to the ordinance did not violate the Fourth Amendment. On appeal, the Ninth Circuit vacated the district court's order, holding that the federal court should not have exercised its jurisdiction until the state court had resolved the challenges. Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 806-07 *1161 (9th Cir.2001). The Ninth Circuit ordered the federal district court to stay federal proceedings until state courts determined the validity of the ordinance.
¶ 9 The Franklin County Superior Court then allowed four tenants to intervene in the state case in order to raise constitutional challenges to the ordinance under the Fourth Amendment and article I, section 7. The intervenors filed their own motion for summary judgment, arguing that Pasco Ordinance 3231 violates article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution. The superior court then granted summary judgment to the city, concluding that Pasco Ordinance 3231 does not invade tenants' privacy rights under either the United States or Washington Constitutions. Specifically, the trial court concluded that the ordinance did not transform landlords and their private inspectors into state actors, and limited inspection for the purpose of determining compliance with housing codes did not amount to an unreasonable search.
¶ 10 The Shaws and the tenants petitioned for direct review in this court. We denied direct review and transferred the case to the Court of Appeals. City of Pasco v. Shaw, 127 Wash.App. 417, 421-22, 110 P.3d 1200 (2005). The Court of Appeals affirmed, also concluding that the ordinance is not unconstitutional because the landlords and their private inspectors are not state actors and the tenants' privacy rights are not offended by the required inspections. The Court of Appeals also held that the ordinance is not unconstitutionally vague. Petitioners sought review in this court, which we granted.

II

Analysis
¶ 11 The Shaws and the intervenors have challenged the constitutionality of Pasco Ordinance 3231 on its face. In order to prevail, they must show that the ordinance is unconstitutional beyond a reasonable doubt and there are no factual circumstances under which the ordinance could be constitutional. Citizens for Responsible Wildlife Mgmt. v. State, 149 Wash.2d 622, 631, 71 P.3d 644 (2003); Tunstall v. Bergeson, 141 Wash.2d 201, 221, 5 P.3d 691 (2000). Whether the petitioners have met this high burden is a question that we review de novo. Shoop v. Kittitas County, 149 Wash.2d 29, 33, 65 P.3d 1194 (2003).
¶ 12 The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Under the Fourth Amendment, to determine whether a search has occurred, we ask whether the government action invaded a "justifiable, reasonable, or legitimate expectation of privacy." State v. Carter, 151 Wash.2d 118, 127, 85 P.3d 887 (2004).
¶ 13 Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article I, section 7 bestows upon Washington citizens protections that are "qualitatively different from, and in some cases broader than, those provided by the Fourth Amendment." City of Seattle v. McCready (McCready I), 123 Wash.2d 260, 267, 868 P.2d 134 (1994). Article I, section 7 recognizes privacy interests that Washington citizens have held or should be entitled to hold, free from government intrusion. Carter, 151 Wash.2d at 126, 85 P.3d 887.
¶ 14 In 1994, this court examined a Seattle residential housing inspection program in which city inspectors sought to inspect rental properties for housing code violations over tenant objection. McCready I, 123 Wash.2d at 264-65, 868 P.2d 134. This court concluded, in the context of inspection by government officials, that nonconsensual inspection of residential rental units invaded the tenants' private affairs and that no authority of law supported warrants to search for housing code violations absent probable cause. Id. at 271, 280-81, 868 P.2d 134. In response, the city began to obtain administrative inspection warrants supported by probable cause that a housing violation had occurred. City of Seattle v. McCready (McCready II), 124 *1162 Wash.2d 300, 309, 877 P.2d 686 (1994). Then in McCready II, we explained that municipal courts had no inherent authority to issue administrative search warrants, and thus, they had to rely on an authorizing statute or court rule. Id. at 309, 877 P.2d 686. No statute or court rule allowed administrative inspection supported by probable cause to believe a civil, but not a criminal, infraction had occurred. Id. In Bosteder v. City of Renton, 155 Wash.2d 18, 23-24, 117 P.3d 316 (2005), we concluded that the same result is required under the Fourth Amendment. Administrative search warrants must be supported by an authorizing statute or court rule or by allegations of a criminal violation supported by probable cause. See id. at 29, 117 P.3d 316.
¶ 15 Because the McCready cases and Bosteder involved searches conducted by city inspectors, these cases do not answer the question presented here, whether the Fourth Amendment or article I, section 7 is violated where a landlord and a privately engaged inspector inspect a rental property for code violations that impact health and safety.
¶ 16 Both the Fourth Amendment and article I, section 7 provide strict privacy protections where invasion of a person's home is involved. However, unless the person conducting the inspection is a state actor, no violation of these constitutional provisions occurs. E.g., Carter, 151 Wash.2d at 124, 85 P.3d 887; In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 337, 945 P.2d 196 (1997). It is the party asserting the unconstitutionality of an action that bears the burden of establishing that state action is involved. E.g., State v. Swenson, 104 Wash.App. 744, 754, 9 P.3d 933 (2000) (citing State v. Walter, 66 Wash.App. 862, 866, 833 P.2d 440 (1992)).
¶ 17 Whether state action has occurred depends on the circumstances of a given case. E.g., id. (quoting State v. Clark, 48 Wash.App. 850, 856, 743 P.2d 822 (1987)); see also State v. Thetford, 109 Wash.2d 392, 401, 745 P.2d 496 (1987). A person is a state actor if that person functions as an agent or instrumentality of the state. Walter, 66 Wash.App. at 866, 833 P.2d 440 (citing Clark, 48 Wash.App. at 856, 743 P.2d 822). In making this determination, Washington courts look to "the capacity in which [a person] acts at the time of the search" rather than to the person's primary occupation. State v. Ludvik, 40 Wash.App. 257, 262-63, 698 P.2d 1064 (1985). "Critical factors . . . include [1] whether the government knew of and acquiesced in the intrusive conduct and [2] whether the party performing the search intended to assist law enforcement efforts or to further his [or her] own ends." Swenson, 104 Wash.App. at 754, 9 P.3d 933 (alterations in original) (emphasis added) (quoting Clark, 48 Wash.App. at 856, 743 P.2d 822).
¶ 18 The Pasco ordinance requires a landlord to submit a certificate of inspection, but it does not authorize the city itself to search for housing violations. The petitioners point to Kuehn v. Renton School District No. 403, 103 Wash.2d 594, 600, 694 P.2d 1078 (1985), in which we held that parent chaperones of a high school student trip acted with enforcement authority of school officials when they searched student bags. However, under the Pasco ordinance a landlord can engage private inspectors in order to further the private objective of obtaining a certification needed to maintain a business license. Significantly, if a private inspector finds code violations, the ordinance does not require the inspector to turn his or her findings over to the city. Thus, a landlord can remedy any violations found by an independent inspector, submit to another inspection, and obtain a license based on the new inspection, without the city ever being notified of the original violations. The city insists only upon the certificate that an inspection has been successfully completed. Landlords first and foremost further their own ends when they engage in the inspections contemplated by the ordinance. In sum, the petitioners have not met their burden of showing that landlords and their privately engaged inspectors are state actors. Absent state action, neither the Fourth Amendment, nor article I, section 7 was violated.
¶ 19 We also note that RCW 59.18.150(1) already provides that a tenant cannot unreasonably withhold consent to the landlord to enter into the rental unit in order to inspect the premises, and the act allows some third *1163 parties to accompany the landlord upon entrance. In Kalmas v. Wagner, 133 Wash.2d 210, 219-20, 943 P.2d 1369 (1997), this court reasoned that if the scope of a landlord's entrance does not exceed the legitimate purposes contemplated by the Residential Landlord-Tenant Act of 1973 (RLTA), no unreasonable search has occurred. Of course, the RLTA provides some limitations to landlord entry. A landlord, accompanied by his or her chosen inspector, cannot enter without at least two days' notice to the tenant, and they must enter at a reasonable time. RCW 59.18.150(5). In addition, the inspection necessary to fulfill the requirements of the Pasco ordinance is limited to a survey for the ordinance's habitability requirements. Neither landlords nor their privately engaged inspectors are permitted to search a tenant's belongings or search for evidence of a crime. The ordinance contemplates no assistance to law enforcement in the form of uncovering any illegal acts on the part of tenants. See Swenson, 104 Wash.App. at 754, 9 P.3d 933. The inspection required by Pasco Ordinance 3231 does not exceed what is already allowed by the RLTA.[2]
¶ 20 Under these circumstances, entry into a rental unit necessary to obtain a certificate required to renew a business license is a private action that is intended to benefit the landlord. Nor have the Shaws shown that the ordinance transforms landlords and their chosen inspectors into state actors. There being no state action, there is no article I, section 7 or Fourth Amendment violation.[3] Furthermore, the Pasco ordinance does not require anything that is not already permitted by law.[4]
¶ 21 Finally, petitioners argue that Pasco Ordinance 3231 is unconstitutionally vague. We presume that ordinances are constitutional and the party challenging the ordinance must prove vagueness beyond a reasonable doubt. City of Seattle v. Eze, 111 Wash.2d 22, 26, 759 P.2d 366 (1988). An ordinance is unconstitutionally vague if "persons `of common intelligence must necessarily guess at its meaning and differ as to its application'." Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The ordinance need not meet impossible standards of specificity. Eze, 111 Wash.2d at 26, 759 P.2d 366. An ordinance is constitutional if it provides adequate notice of prohibited conduct and prevents arbitrary, discretionary enforcement. Haley, 117 Wash.2d at 739-40, 818 P.2d 1062.
¶ 22 As noted above, Pasco Ordinance 3231 lists nine habitability requirements that landlords must certify. The petitioners *1164 challenge the ninth requirement: that no conditions exist that constitute "violations of other applicable codes, rules or regulations." CP at 296. The petitioners claim that this requirement gives inspectors broad discretion to choose and apply unspecified standards.
¶ 23 However, the language of the ordinance is not so vague that an ordinary person would not understand its meaning. The requirement at issue occurs in the context of a list of specific habitability requirements and it is limited to "applicable" codes, rules, and regulations. Arbitrary discretion is limited by the standards set forth in relevant housing codes and regulations. The petitioners have not met the heavy burden of showing vagueness beyond a reasonable doubt.

III

Conclusion
¶ 24 Pasco Ordinance 3231 was enacted in an attempt to protect tenants and nearby property owners from dangerous and unhealthy housing conditions. The inspections contemplated by the ordinance do not amount to state action, nor does the ordinance require any intrusion not already permitted by the RLTA. Finally, Pasco Ordinance 3231 is not unconstitutionally vague. We therefore conclude that the petitioners have not met their heavy burden of proving Pasco Ordinance 3231 unconstitutional and we affirm the Court of Appeals.
WE CONCUR: CHARLES W. JOHNSON, BARBARA A. MADSEN, SUSAN OWENS, MARY E. FAIRHURST, Justices.
CHAMBERS, J. (concurring).
¶ 25 I cautiously concur because I do not read the majority as eroding the important principles embodied in article I, section 7 of our constitution and as explained in City of Seattle v. McCready, 123 Wash.2d 260, 270, 868 P.2d 134 (1994). Under our state constitution, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7. Article I, section 7 protects "`those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass'" without a warrant issued by a neutral magistrate and supported by probable cause. McCready, 123 Wash.2d at 270, 868 P.2d 134 (quoting State v. Boland, 115 Wash.2d 571, 577, 800 P.2d 1112 (1990)). At a minimum, a city ordinance that authorizes inspection "warrants" without probable cause does not provide the "authority of law" as meant by our constitution. McCready, 123 Wash.2d at 271-72, 868 P.2d 134.
¶ 26 But the city of Pasco clearly drafted its ordinance with McCready in mind. This ordinance does not require state agents to make the inspections and does not use the fig leaf of probable-causeless "warrants" to authorize home invasions. Instead, Pasco property owners must prove that their rental units are habitable as a condition of doing business in the city and are free to contract with private inspectors. See PMC 5.78.020(C). On paper, at least, this is a critical difference. Still, we should always be skeptical when any government seeks to invade any person's home, no matter how well meaning the exercise of police power may be.
¶ 27 I am cautious because this ordinance potentially invades two privacy interests. The first is that of landlords who are in the business of renting apartments. I recognize that the city of Pasco found substandard housing was a growing problem, requiring increased regulation and enforcement in response. Housing is a heavily regulated industry, and I conclude that landlords have a reduced privacy interest. Many housing code provisions go to the very structure of the buildings rather than to traditionally understood private affairs. See, e.g., WAC 51-50-2106.1 (seismic requirements); WAC 51-50-1015.1 (exits); but see WAC 51-50-1208.2, .3 (minimum room sizes); WAC 51-50-1101.2.6 (maximum/minimum distance of shelves within toilet compartments from floor). Many industries such as restaurants and day care providers are pervasively regulated, which even in our state may create a reduced expectation of privacy. See generally State v. Thorp, 71 Wash.App. 175, 178, 856 P.2d 1123 (1993) (citing Marshall v. Barlow's, Inc., 436 U.S. 307, 313, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978)). Courts in Washington *1165 have even allowed commercial fishermen to be criminally prosecuted for refusing to allow a warrantless searches of their boats because of similar reduced expectation. State v. Rome, 47 Wash.App. 666, 670, 736 P.2d 709 (1987). I conclude that landlords who offer housing for rent should reasonably expect that the government will require that housing be habitable and meet minimum standards.
¶ 28 The other privacy interest potentially invaded is the privacy interest that was primarily before us in McCready: that of the tenants. In this case, unlike in McCready, it is not necessarily a government agent directly entering the tenants' homes. Instead, the city of Pasco merely requires the landlord to provide certification that the housing offered to the public meets minimum housing standards and allows certain nonstate agent professionals to provide that certification. PMC 5.78.020. Instead of authorizing state agents to enter the property themselves, the ordinance utilizes the landlord's authority under the State's Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, to enter the tenant's home. PMC 5.78.020. Importantly, that act does not create a blanket right of entry, and it does provide a mechanism to protect the privacy interests of the tenant. The act requires that the tenant be given at least two days' written notice of the landlord's intent to enter the tenant's home and authorizes entry only at reasonable times. RCW 59.18.150(5).[1] "The landlord has no other right of access except by court order, arbitrator or by consent of the tenant," with exceptions not relevant to us. RCW 59.18.150(6). Thus, any inspection of an occupied unit performed pursuant to the ordinance should be done with the tenant's consent or by court order or arbitrator; anything less runs the risk of violating RCW 59.18.150 and article I, section 7 of our state constitution.
¶ 29 I caution, however, that if and when inspections go beyond reasonable inspections for housing code violations, the complexion of this controversy will change. Cf. State v. Ludvik, 40 Wash.App. 257, 262-63, 698 P.2d 1064 (1985). If inspectors function like the eyes and ears of the State, looking for suspicious activities, they will become government agents. Id. ("[O]fficial involvement is not measured by the primary occupation of the person conducting the search, but the capacity in which he acts at the time."). If in fact, if not in job title, these inspectors are state actors, conducting warrantless intrusions into the private affairs of tenants, the protections of article I, section 7 will attach. See State v. Swenson, 104 Wash.App. 744, 754-56, 9 P.3d 933 (2000) (state action when the government "knew of and acquiesced in the intrusive conduct" and the private citizen "intended to assist law enforcement efforts." (emphasis added) (quoting State v. Clark, 48 Wash.App. 850, 856, 743 P.2d 822 (1987))).
¶ 30 Because that is not the case before us and because I agree with the majority that the challengers have failed to demonstrate a facial or as applied violation of the state constitution, I respectfully concur.
WE CONCUR: Chief Justice GERRY L. ALEXANDER.
SANDERS, J. (dissenting).
¶ 31 The majority holds the City of Pasco may require landlords to search tenant apartments absent tenant consent notwithstanding our constitution's protection against unauthorized invasions of privacy. The linchpin of the majority's argument is that under these facts there is no state action. I disagree. Even though the ordinance allows landlords the option to utilize private inspectors approved by the city, private inspectors under the ordinance are simply doing the work of city inspectors. This is state action which invades the tenant's home without the "authority of law" provided by a warrant. WASH. CONST. art. I, § 7. These warrantless residential searches therefore violate our state constitution.
¶ 32 Article I, section 7 of our constitution provides, "No person shall be disturbed in *1166 his private affairs, or his home invaded, without authority of law." On July 7, 1997, Pasco City Council enacted Ordinance 3231 to require residential landlords to certify their units meet certain health, safety, and building code requirements. But before a landowner can obtain certification, his residential units must be physically searched by either a city enforcement officer or a private inspector approved by the city. Pasco Municipal Code (PMC) 5.78.020(C).[1] Consent of the tenant to a search of his own residential unit is not required by the ordinance.
¶ 33 The majority claims because a landlord may resort to private inspectors, there is no state action. Majority at 1162. But "official involvement is not measured by the primary occupation of the person conducting the search, but the capacity in which he acts at the time." State v. Ludvik, 40 Wash.App. 257, 262-63, 698 P.2d 1064 (1985). To determine if there is state action we ask: (1) whether Pasco knew of and acquiesced to the intrusion and (2) whether the inspector intended to assist law enforcement. See majority at 1162.[2] Here the answer to both questions is a clear yes: Pasco requires an inspector who is employed or approved by the city to search a tenant's residence to assess (and thereby help enforce) health, safety, and building codes. And if a landlord does not force the warrantless search over tenant objections, he loses his business license.
¶ 34 There is state action if Pasco either "`instigated, encouraged, counseled, directed, or controlled'" private conduct. State v. Wolken, 103 Wash.2d 823, 830, 700 P.2d 319 (1985) (quoting State v. Mannhalt, 33 Wash. App. 696, 702, 658 P.2d 15 (1983)). Similarly, the Ninth Circuit has said there is state action under the Fourth Amendment even if the government is involved only "indirectly as an encourager of the private citizen's actions." United States v. Walther, 652 F.2d 788, 791 (9th Cir.1981); see also United States v. Reed, 15 F.3d 928, 931-33 (9th Cir.1994). Pasco instigates and encourages these searches, dictates their scope, and examines their fruits. The housing code inspection not only occurs at Pasco's demand, but the ordinance also rigidly lays out who can perform the inspections and the specific scope of the inspection. See PMC 5.78.020(C). Furthermore, the ordinance requires a landlord to select an inspector that is either directly employed or specifically approved by the city. Id. Given such extensive government involvement, the physical search need not be done by an actual city employee to trigger constitutional protections. The nonconsensual search of residential rental units invades tenants' private affairs without either the tenant's consent or a warrant fulfilling our constitutional requirement of "authority of law." City of Seattle v. McCready, 124 Wash.2d 300, 304, 877 P.2d 686 (1994) ("[W]ithout the tenant's consent, a warrant [is] necessary to authorize an inspection of rented premises."); see also Camara v. Municipal Court, 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (holding administrative searches conducted by municipal building inspectors are significant intrusions on individual's Fourth Amendment interests, and such searches must be conducted with a warrant); Chapman v. United States, 365 U.S. 610, 616-17, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) ("[T]o uphold [an entry based only on a landlord's consent], search and seizure `without a warrant would reduce the [Fourth] Amendment to a nullity and leave [tenants'] homes secure only in the discretion of [landlords].'" (last three alterations in original) (quoting Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948))). Here there is no warrant or other authority of law to authorize the inspector's intrusion.
¶ 35 The majority claims, however, private inspectors are merely furthering the "private *1167 objective of obtaining a certification needed to maintain a business license." Majority at 1162. The business license requirement is imposed by the government. Moreover landlords are coerced into complying with these unwanted intrusions into private residential units to further the government's objective of compliance with health and safety codes. The landlords are not "first and foremost furthering their own ends when they engage in the inspections contemplated by the ordinance," id., but are actually furthering the city's ends. See also majority at 1163 ("[E]ntry into a rental unit necessary to obtain a certificate required to renew a business license is a private action that is intended to benefit the landlord."). The inspector's reports are necessarily delivered to the city, and the city retains full authority to punitively enforce any perceived code violation.
¶ 36 Moreover, potentially if evidence is seen in plain view indicating a criminal violation by the tenant, this could also be used to support issuance of a criminal search warrant and subsequent prosecution of the tenant. Obviously this is state action. Pasco caused the inspector's intrusion, and the inspector assists law enforcement by disclosing the fruits of the physical search of the tenant's home to the government. But absent a warrant or consent, these inspections clearly are without that "authority of law" mandated by our state constitution.
¶ 37 I dissent.
I CONCUR: Justice JAMES M. JOHNSON.
NOTES
[1] This provides a good example of why some tenants may hesitate to report housing code violations.
[2] Petitioners point to the provision of the RLTA allowing fire officials to seek a warrant for inspection upon a showing of probable cause that criminal fire code violations exist in a specific dwelling. RCW 59.18.150(2). Petitioners claim that this provision provides an example of "authority of law" necessary to justify invasion of tenants' privacy interests, and absent a similar provision, city inspectors cannot enter rental units without tenant consent. However, this argument ignores the fact that the Pasco ordinance requires landlords to provide certification from privately engaged inspectors. No city official is authorized to enter the rental dwelling under the ordinance.
[3] In addition, in order to successfully mount a facial challenge, the petitioners must show there are no factual circumstances under which the Pasco ordinance could be constitutional. Citizens for Responsible Wildlife Mgmt., 149 Wash.2d at 631, 71 P.3d 644; Tunstall, 141 Wash.2d at 221, 5 P.3d 691. The Shaws ignore the fact that landlords can choose the time of the inspection within a six-month window. Pasco Ordinance 3231, § 2(b) (assigning a three-month renewal period and allowing physical inspection within 90 days prior to the certificate of inspection). Under these circumstances, at least some landlords will be able to conduct inspections between tenancies, thereby eliminating any tenant involvement at all.
[4] We also recognize that as a condition of licensing, a licensee often must demonstrate to the government, or to a certified or accredited private inspector, that he or she can meet the minimum licensing standards. For example, prior to license renewal, nursing homes are subject to surprise inspection of every part of the premises and examination of all records. RCW 18.51.091. Similarly, family home child care providers are subject to licensing inspections. See WAC XXX-XXX-XXXX. If we were to hold Pasco Ordinance 3231 unconstitutional, doing so might tempt licensees to thwart licensing regulations by using article I, section 7 or the Fourth Amendment as a means to reduce the costs of complying with health and safety regulations to the detriment of some of our most vulnerable citizens.
[1] The landlord may enter without notice only in the event of an emergency or if it is impractical to give notice. RCW 59.18.150(5).
[1] Pasco also allows either a Washington licensed structural engineer or architect to inspect the unit. PMC 5.78.020(C). Nonetheless they are still government licensed and also doing the work of a government inspector.
[2] The same test is used under the Fourth Amendment to determine whether a private individual is a state actor. "[The] two critical factors in the `instrument or agent' analysis are: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." United States v. Miller, 688 F.2d 652, 657 (9th Cir.1982) (quoting United States v. Walther, 652 F.2d 788, 791-92 (9th Cir.1981)).